Rakestraw *et al. vs.* Brogdon.

---

GAINUM T. RAKESTRAW *et al.*, executors, plaintiffs in error, *vs.* WILLIAM F. M. BROGDON, defendant in error.

1. Even though the evidence make a good case, unless it be substantially the case alleged in the bill, the complainant ought not to recover. Especially is this true where the matter of the bill not proved is libelous of the dead or wanting in nothing but malicious publication to make it so.

2. Where the bill alleges, among other things, that a bond for titles belonging to complainant, was, by fraud and deceit, drawn from the custody of his wife in his absence, and presented to the obligor, and that the obligor was induced by false and fraudulent representations to convey the land to the defendants' testator, the person guilty of the fraud; and where, on the

trial, the complainant himself proves that there never was any such bond in existence, and the conveyance in question was obtained fairly and honestly, with his consent and upon his written order, there can be no verdict in his favor, whether these facts, with others proven, raised an implied trust for his benefit or not, the transaction described in the bill being essentially different from the transaction disclosed by the evidence, and the basis of trust in the one being fraud, and in the other, co-operation and mutual consent.

Equity. Pleadings. Trusts. Fraud. Before Judge RICE. Gwinnett Superior Court. December Adjourned Term, 1875.

William F. M. Brogdon filed his bill against Gainum T. Rakestraw and Willis F. Scales, as executors of William Scales, deceased, making, in brief, the following case:

In 1848 he married Necy Jane Scales, daughter of William Scales. In 1859 he purchased from one James Reeves, lot number three hundred, in DeKalb county, for $2,000 00. He paid $1,600 00 in cash, gave note for the balance, and took bond for titles. Soon afterwards he assumed possession, and so remained until the year 1860, when his wife's conduct became so disagreeable that he was forced to leave her. In 1864, while still away from his wife, William Scales, finding that the bond for titles had been left in the possession of his daughter, the said Necy Jane, procured it from her by fraud ; and pretending to act under authority from Brogdon, paid the remaining $400 00 due, canceled the note, and took a deed to the property in his own name. In 1869 Necy Jane Brogdon brought libel for divorce, perfected service by publication, and obtained a divorce *a vinculo matrimonii*, without any knowledge of said Brogdon. Pending this libel for divorce, Scales made his will in which he devised a life estate in said lands to said Necy Jane, remainder in fee to her children, and on failure of these, reversion to his other heirs.

The prayer is that upon payment by Brogdon to the executors of the amount spent by Scales, they shall make title to him, or else that the land be sold and the proceeds divided *pro rata ;* or else that the executors repay the amount expended by him. Discovery was waived.

Rakestraw *et al. vs.* Brogdon.

Defendants' answer denied all the material allegations of the bill which sought to charge testator with a trust for complainant, and says that if he had any cause of action, it was a mere monetary demand, and barred by the statute of limitations.

On the trial, J. M. Reeves testified as follows: He had owned lot number three hundred, in DeKalb county; in 1862 he sold the same to W. F. M. Brogdon for $2,000 00. In July of that year Brogdon paid $50 00, in August $220 00, and in September $800 00. The contract was not in writing; no bond for titles was given, but receipts for the money as partial payments on the land. In October, 1865, William Scales paid $938 00, part of which was for interest, and witness made him a deed to the property. This was not done before the presentation by Scales of an order from Brogdon to that effect, properly signed and attested. Does not know who paid the tax.

William C. Jackson testified that he had a conversation with William Scales, in which the latter stated that he had paid $300 00 or thereabouts, and taken a deed to the place. He did not state who paid the remainder.

James M. Flowers and James Polk each testified to having conversed with Scales during the year 1865, and that he stated that he had paid $400 00 and taken title in his own name, but for the purpose of securing a home for Brogdon's family. The latter further testified that Scales signified his intention of making a deed to Necy Jane Brogdon and her child, when complainant should repay the amount expended by him.

Defendants' counsel admitted the marriage and divorce of Brogdon and Necy Jane, and the death of William Scales, as charged in the bill.

The will of Scales was introduced in evidence to show the devise to Necy Jane, with remainder and reversion as set forth above.

The jury found that complainant had paid towards the land $1,070 00, and William Scales $938, 00; they declared

Rakestraw *et al. vs.* Brogdon.

a trust in favor of complainant in proportion to the amount paid by him, and that the land should be sold and the proceeds divided *pro rata.*

Defendants moved for a new trial, on the following grounds, among others:

1st. Because the court erred in charging that if Brogdon paid a part of the purchase money, to that extent he is benificially interested, nor is this changed by the fact that Reeves made title to Scales by order of Brogdon, in the absence of evidence that Scales bought and paid Brogdon for his interest.

2d. Because the court erred in charging that, in the absence of such evidence, the title made to Scales under the order of Brogdon was to be considered as made subject to his interest.

3d. Because, after the jury had returned a verdict in which no mention was made of a trust estate, the court called their attention to that fact, and caused them to retire again for the consideration thereof. On the second return the verdict included the trust.

The motion was overruled, and defendants excepted.

CLARK & PACE; T. M. PEEPLES; N. L. HUTCHINS, for plaintiffs in error.

WINN & SIMMONS, for defendant.

BLECKLEY, Judge.

1. Compare the evidence with the charges in the bill, and it will appear at a glance, that the verdict is contrary to evidence. The evidence shows that the case made by the bill is not true; the verdict finds, in effect, that it is true. If conflict can exist it is here. Should it be said that the verdict is not to be applied to the averments of the bill, but to some case outside of the bill, the answer is, that proof of a case substantially different from the one alleged, whether the case proved be good or bad, will not warrant a recovery. Relief

Rakestraw *et al. vs.* Brogdon.

cannot be granted for matters not alleged. The court pro-
nounces its decree *secundum allegata et probata* : 6 *Georgia
Reports*, 589 ; *Ayers vs. Daley*, 56 *Ibid.*, 119. This rule
prevails in all courts. If I sue specially, in case, for steal-
ing a promissory note and collecting money thereon from
my debtor, can I recover by proving that, although I had no
note and none was stolen or paid, still, I deposited a certain
sum of money with the defendant, or gave him an order to
collect it from my debtor, and he collected it accordingly ?
Is it immaterial whether I found my demand on larceny or
on agency ? Is theft only a species of bailment ? The bill
which we are considering imputes to a person dead before it
was filed, conduct depraved and dishonorable in procuring
title to land. It tends to blacken his memory ; and if it is not
libelous, it lacks only a malicious publication to stamp it with
that character : Code, sections 4521, 2974.

2d. There can be no reasonable doubt that the difference
between the bill and the evidence is essential. The bill
makes a case of fraud which depends in no respect upon the
intention of the complainant. The defendants are not put
upon notice that his intention is, or can be, material to the
trust sought to be established. But if the evidence embodies
any trust at all, (which we do not decide, as it is *dehors* the
bill,) the very life of the trust hangs on the complainant's in-
tention at the time he gave his consent for the testator to ob-
tain a conveyance of the land, and take it in his own name.
The object or purpose of that consent is a vital question,. yet,
neither the consent itself nor its object is alleged. Indeed, so
far from being alleged, such a consent is inconsistent with the
whole tenor of the bill, and is virtually denied. And still,
the complainant has proved it, and seeks to rest his recovery
upon the implied purpose for which it was given. Until
that consent was given, there was no seed of any trust. It
was then and thereby that the trust afterwards born with the
deed, if any was born, had its conception. The complainant,
previously, when paying for the land so much of the pur-
chase money as he advanced, intended to take title to himself.

When he changed his intention and gave an order for making the deed to another person, what was his purpose? Was it a benefit to himself in the land, or was it something else? That question is not raised by the bill at all, and yet, without having it passed upon by the jury and decided, the theory that a resulting or implied trust is established by the evidence, even if otherwise well founded, cannot be upheld. Thus the great battle-field on the evidence lies wholly outside of the bill. It would be fruitless now to examine, in detail, the various errors ascribed to the court in charging and in refusing to charge the jury. Some of them are necessarily ruled by the general view which we have presented. If there shall be a verdict sustaining the bill on full proof of its averments, it may then become necessary to scrutinize further the instructions by which the jury are guided; but if some of the main facts in this record are not disproved and others established in their place, the defendants below are in no present danger.

Judgment reversed.