## DOGGETT *vs.* SIMMS.*

79  253
94  86

79  253
e117  75

1. To prove a conviction in another court, an incomplete transcript is not sufficient. Exemplification of docket entry, plea of guilty and judgment thereon, is not admissible in evidence to discredit a witness as a convict, without either a transcript of the accusation or indictment, or if lost, some evidence of the contents thereof.

2. What strangers to the suit declare and recite pending the cause,

*This case was argued at the last term, and by order of the court reargued at the present term.

though couched in instruments executed with the solemnity of deeds, and recorded as deeds, is no evidence either of the facts recited or of the intention of one of the litigating parties not to defraud the other.

3. Where a complainant desires the bill to be construed as presenting three aspects for relief, such as actual fraud, constructive fraud and mistake, the bill should suggest all three, and not one only. The court is not bound to charge the jury on a wider case than that made by the bill, though the evidence might warrant it were the bill amended.

January 9, 1888.

Witness. Records. Evidence. Fraud. Mistake. Charge of Court. Before Judge RICHARD H. CLARK. Dekalb Superior Court. · September Term, 1886.

Reported in the decision.

C. J. SIMMONS ; THOS. F. CORRIGAN, for plaintiff in error.

HAYGOOD & MARTIN ; J. B. STEWARD, for defendant.

BLECKLEY, Chief Justice.

In April, 1884, these parties exchanged real estate, and executed to each other deeds of conveyance in fee simple, each deed expressing a consideration of $2,500 in hand paid. Miss Doggett conveyed to Simms certain city property in Atlanta, and he conveyed to her a farm in Jasper county, described in the deed as containing two hundred acres, more or less. She was an unmarried woman of small means, residing on the city property, and made the exchange with a view to removing to and residing on the farm. She wanted a home in the country. Her object and intention were known to Simms. Pending the negotiations, he made representations to her touching the quantity, quality and value of the land, its productiveness and past production, how many acres of bottom, how many of woodland, cost of the dwelling-house, etc. They went in company to the farm, and made

Doggett *vs.* Simms.

together a brief inspection. He showed her the boundaries, and as much of the land as she chose to look at. She took dinner in the house, and there was no obstacle to her seeing what it was and its condition. The boundaries of the tract as he pointed them out included the dwelling and the outbuildings used in connection therewith. The agreement to exchange was not made immediately after the visit of inspection, but there was a considerable interval for deliberation. Deeds were interchanged on the 29th of April, and in July, Miss Doggett removed to the premises, having continued to occupy the city property until that time. She remained at her new home only long enough to become dissatisfied with her bargain; then returned to Atlanta, resumed possession of a part of the city property, and on the 30th of August filed a bill against Simms for a rescission, praying for the cancellation of her deed to him, offering up his to her for cancellation; also praying an accounting for rents, and concluding with a prayer for general relief. Her bill alleged actual fraud, by knowing and wilful falsehood in defendant's representations, and a deliberate purpose to mislead, deceive and defraud. Pending the bill it was amended by charging that the dwelling-house and outhouses were not on the tract; that Simms knew it; that he did not have title to the land on which the house and buildings stood, and conveyed none to complainant; that this was a part of his wilful and intentional fraud; and that the house was a principal consideration and inducement to the complainant in making the exchange of her city property for the farm. She repeated her prayer for rescission, etc. The bill waived discovery.

By his answer Simms denied any and all fraud, and most of the facts from which actual fraud could by any process of reasoning be inferred. Indeed, from his answer, he seems to be not only an innocent, but an injured man, rather than a wrong-doer.

At the trial there was much evidence *pro* and *con*, and both parties testified in their own behalf.

1. To discredit the complainant, the defendant offered a partial record from the city court of Atlanta, consisting of a plea of guilty and a judgment of the court thereon, together with a docket entry, showing that a person bearing the same name as complainant was convicted at March term, 1882, of larceny from the house. In his certificate authenticating the transcript of this record, the clerk certifies that "the warrant and accusation which were of file in this office have been either mislaid or lost." To the admission of this transcript the complainant objected on the ground, amongst others, that no accusation or indictment was produced. (Fourth ground of the motion for a new trial.) The court overruled the objection and admitted the transcript, without requiring any evidence to be given of the contents of the accusation, or any evidence of its existence or loss save the clerk's certificate.

The city court of Atlanta is a court of limited jurisdiction as to the trial and punishment of offences, and there was no evidence in the transcript to show what goods were stolen, whose goods, or of what value, or when, or from whose house they were taken, or who the accuser was, or that the accusation, if any, was based on a proper affidavit; when or before whom the affidavit, if any, was made; when the accusation was filed, or what it charged. The docket entry, plea and judgment furnished none of these particulars.

The rule of the English law, as it was prior to a statute passed in the present reign, is laid down in 1 Phillips Ev. 31 : "If the objection to the competency of a witness is founded on criminal proceedings instituted in any other court, these proceedings must appear on their face to be regular, and be regularly proved. A document purporting to be an indictment and conviction is imperfect as a record without a caption; since the caption shows by what authority the indictment was found. And the indictment

must state all circumstances essential to constitute the offence." Record the sole evidence: 1 Gr. Ev. §§372, 375. As to completeness, see *Dupont vs. Mayo*, 56 *Ga.* 308. There must be the same evidence of conviction to discredit a witness as would be needful if the effect of conviction would be to disqualify him. Com. *vs.* Gorham, 99 Mass. 420.

The loss of records or papers of file is no excuse for not showing their contents, which may be done by parol evidence. 1 Greenleaf Ev. §509 and notes; *Bridges vs. Thomas*, 50 *Ga.* 378; *Gardner vs. Granniss*, 57 *Ga.* 540(6). The court erred in overruling the objection.

2. That larceny is an offence classed with *crimen falsi*, see *Georgia Railroad vs. Homer*, 73 *Ga.* 251. The point made that the moral turpitude was wiped out by lapse of time and by presumptive repentance, is matter of argument to the jury. A court cannot know of such an expurgation judicially, the same being spiritual benefit of clergy, not legal. Old as well as new crimes may affect credit. Perhaps the larceny, if committed, was a "very little one," as the fine imposed was but five dollars, with the alternative of paying the same or retiring within the common jail for the space of two months. But small stealing is dishonest, and had the conviction been legally proved, the effect on credibility would have been for consideration by the jury.

3. The defendant derived his title from his mother, Mrs. Pharr, formerly Mrs. Simms, who had previously conveyed to Mrs. Walton a portion of her original tract; and Mrs. Walton had conveyed part of her purchase to Waldrop and part to Holloway. The court admitted in evidence, over the complainant's objection, two papers, both recorded as deeds, and both executed before two witnesses: one by Mrs. Walton, dated September 7th, 1886; the other by Waldrop and Holloway, without any date. Neither of them conveyed anything or relinquished anything to anybody, nor had they any party of the second part, being

unilateral or one-sided. By her paper, Mrs. Walton de-
clared that she does not and never did claim any right or
title to or interest in the two acres upon which the build-
ings are located; that when she sold to Holloway, it was
expressly understood that these two acres were not sold;
that she had no title to, and did not intend to convey the
same to Holloway; that title to the same remained in Mrs.
Simms; and that these two acres were part of the 200
acres, that is the farm now in controversy. Waldrop and
Holloway declared by their paper that neither of them
ever owned or claimed, nor do they now claim, the two
acres with house thereon reserved by Mrs. Simms, and that
they always understood the same to belong to Mrs. Simms·

Having admitted these papers in evidence (5th and 6th
grounds of the motion for a new trial), the court, denom-
inating them relinquishments, charged the jury thereon
(9th ground of the motion) that they would estop their
makers from enforcing their title against the complainant;
and further, that they could be considered in passing upon
fraud or no fraud in defendant's representations as to the
houses.

For several reasons these papers were not admissible·
They were created, one of them certainly, and the other
apparently, pending the suit and after the parties were at
issue on the question of title to the house and buildings.
No party can sally forth into the world and have evidence
manufactured to aid him in pending litigation. Mere re-
citals and declarations of strangers to the suit cannot be
converted into evidence by reducing them to writing, sign-
ing, sealing, attesting and recording. If the facts recited
and declared are true and relevant, why should they not
be proved in the usual way, with full opportunity to cross-
examine the witnesses?

The charge of the court was founded on error in admit-
ting the writings, and extended that error by a misconcep-
tion of their nature and effect. They are not relinquish-
ments; they do not convey to anybody or relinquish to

Doggett *vs.* Simms.

anybody; they merely speak to the air and proclaim so and so; they will not estop in favor of any person who does not act upon them, and the complainant has not acted upon them, and seems much averse to doing so unless constrained by verdict and decree. And then, how can these papers, one of them at least not executed till September, 1886, throw light on what Simms intended in April, 1884? By procuring declaratory papers to be executed, could Simms throw light back on his past intentions and clear himself of imputed fraud? We think not. Under the evidence, the main pressure of the case seems to be upon this question of title to the buildings and the two acres of ground upon which they are situated.

4. Other charges of the court and refusals to charge need not now be dealt with. It is not alleged in the bill that there is any occult quality in the land that renders it more deceptive than ordinary soil. And as to constructive fraud and mere mistake, they seem to be after thoughts. In charging the jury, the court does right to regard the state of the pleadings as well as the evidence. If a complainant cuts and slashes in the bill, charging actual fraud, piling it up and up, without once suggesting constructive fraud or mere mistake as a ground of relief, why should the court charge anything on constructive fraud or bare mistake as entitling the complainant to a verdict? Must the court charge the jury on a theory of the case, when the complainant has made no charge against the defendant based on that theory? If a transaction is so ambiguous as to bear three interpretations, such as actual fraud, constructive fraud and mistake, why should not all three be alledged, so as to apprise the defendant that all are to be canvassed, and so as to apprise the court in due time that all are relied upon; and what is not less important, so as to let the record speak the truth, the whole truth, when the verdict is returned and a decree rendered? Is a man to be branded unambiguously and absolutely with actual fraud by decree, when he has only made a mistake

or committed a fraud in law but none in fact? The sooner .we forsake superlative and exaggerated pleading the better. And nothing will do more to correct the evil than for courts to adhere to the ancient and salutary rule that *allegata* and *probata* must correspond. *Rakestraw vs. Brogdon*, 56 *Ga.* 549.

Judgment reversed.