## 2398.  GIBBS *v.* THE STATE.

1. A railroad car may be treated as a dwelling-house and may be the subject of burglary when it is used exclusively for the purposes of habitation.

2. The defendant's guilt of the crime of burglary being wholly dependent upon the inference arising from the possession of goods stolen at the time of the burglary, and this possession being shown by the uncontradicted and unimpeached evidence to be lawful and consistent with his innocence of burglary, the verdict was contrary to the evidence and a new trial should have been granted.

DECIDED JULY 25, 1910.

Indictment for burglary; from Floyd superior court—Judge Wright.  December 28, 1909.

*M. B. Eubanks, W. B. Mebane,* for plaintiff in error.

*John W. Bale, solicitor-general,* contra.

RUSSELL, J.  The defendant in the court below was convicted of the offense of burglary.  He moved for a new trial upon general grounds, and now excepts to the overruling of his motion.  Evidence on the part of the State showed that the prosecutor occupied a railroad car which had been placed at a point called Atlanta Junction, as a dwelling-house.  "He lived, ate, and slept in this car."  The car was placed there for the prosecutor and other section hands to live in.  The car was entered, on May 21, through one of the windows, and a certain suit-case, some shoes, a coat, and pants were taken therefrom while the prosecutor was absent at his work.  The pants were speckled or of spotted color, the coat was black with stripes in it, and the shoes were low-quartered men's shoes No. 9.  About two weeks after these goods were taken, the defendant came up to the car at Atlanta Junction, in the presence of the prosecutor and of several other men, wearing the pants and shoes which had been stolen, and talked "to the boys."  The prosecutor "fooled him down to Mr. Christopher's house," and he was arrested.  This is substantially the State's case as shown by the

testimony.    A witness whom it was not sought to impeach by proof of general bad character or by contradictory statements, and whose testimony was not contradicted by any evidence in the case, testified that on June 7 (following the burglary) she saw one Peter Baker sell the defendant a pair of shoes and pants similar to those that were lost, for 60 cents.    The other persons mentioned by this witness as being present at the time of the transaction were not introduced by the defendant; but there was no conflict between this testimony of the defendant's witness, which accounts for the defendant's possession of the goods, and the testimony of the prosecutor.    On the contrary the prosecutor himself testified that he knew Peter Baker; that Peter lived in the quarters, and perhaps knew that he had those things in the car.

1.   A railroad car which is withdrawn from service as such and is used exclusively for the purposes of habitation, as the car in this case was shown to be, may be so included within the term "dwelling-house" as to be the subject of burglary, and one who breaks in or enters it for the purpose of committing a felony or a larceny therein may properly be convicted of burglary instead of the lesser offense of breaking and entering a railroad car.

2.   Upon the evidence submitted the conviction of the defendant was not authorized.    The corpus delicti was proved, it is true, but the only circumstance connecting the defendant with the perpetration of the offense was the possession of part of the stolen property, and this possession was so explained by uncontradicted testimony as necessarily to rebut the inference arising from possession of the stolen property.    The decision must be controlled by the ruling in *Hampton* v. *State, 6 Ga. App.* 778 (65 S. E. 816), and similar cases.    If the witness who corroborated the defendant's statement had been impeached or discredited in any way, we should not feel authorized to disturb the verdict.    If there were any circumstance which would supply a reason why the jury did not believe this witness, we would not interfere.    If there had been any testimony that the witness was unworthy of belief, on account of general bad character or of a conflict between different portions of the witness's own testimony;—if the witness had made contradictory statements either previously or upon the trial, or if there had been any evidence directly or circumstantially in conflict with her testimony, the verdict would be authorized; but a jury can not arbitrarily dis-

regard testimony which is wholly unimpeached and not contra-
dicted, unless it is in relation to a matter which is unreasonable or
impossible.   If, upon another trial, the witness is shown by testi-
mony to be unworthy of credit, for any legal reason or by any
method provided by law, the testimony delivered upon this trial
might be discredited and the jury authorized to disregard it; but
in the absence of some testimony to this effect upon the trial now
under review, it appears to us that the jury merely arbitrarily dis-
regarded uncontradicted and unimpeached evidence; and it is be-
yond their power to do this in any case.    *Judgment reversed.*