### 8973.  BOLTON v. THE STATE.

1. In criminal law, conspiracy is a combination or agreement between two or more persons to do an unlawful act, and may be established by proof of acts and conduct, as well as by direct proof or by express agreement.

(a) The evidence in this case authorized the charge of the court on conspiracy, and no error appears in the excerpts complained of.

2. There was evidence to support the verdict.
      Decided November 1, 1917.

Indictment for assault with intent to murder; from Gwinnett superior court—Judge Cobb.  June 4, 1917.

The indictment charges that the defendant "did commit the offense of assault with intent to murder in the second degree, by then and there being present, aiding and abetting the act to be done, and did then and there procure and direct and tell Jeff Staples to shoot Allen Sudderth, and that the said Jeff Staples then and there, with force and arms and a certain pistol, being a weapon likely to produce death, did unlawfully and with malice

aforethought shoot and wound one Allen Sudderth with said weapon." The record shows that Allen Sudderth, the person alleged to have been assaulted, was a policeman, that there was a show in town, and that while he was on the show-grounds the defendant walked up in front of him and began to curse. What immediately followed is thus told by Sudderth: "I walked to him and asked him to be quiet, that he would have to quit cursing, and he said he was going to kill that woman or that man; he said so much I can't remember all he did say. I says, 'Mr. Bolton, you will have to quit cursing or get off the show-grounds; that is all there is to it.' He said, 'This is my land and I will stay on it as long as I God damn please.' I told him again, I said, 'Mr. Bolton, you will have to quit cursing or get off the show-grounds, or I will have to lock you up.' He said, 'I won't do no such a God damn thing,' that I wasn't man enough; and he kept cursing. His little boy began to plead with him and beg him to go home. I said, 'Mr. Bolton, if you won't listen to me, listen to your little boy down there at your knees pleading and praying for you to go home.' He said, 'God damn you and him too.' I says, 'Mr. Bolton, I will have to lock you up, or you will have to go home one. I took hold of his arm, and when I took hold of his arm he tried to jerk loose from me, and his top shirt-sleeve tore out, but his undershirt sleeve didn't tear; so I held to his sleeve. Then he hit at me and knocked my cap down over my eyes, and I knocked my cap off, and he hit me again on the side of the head, and I hit him with my billy. We were going around and around; he was a little better man than I was, and he jerked me around and around, and we had gone something like twenty feet, I guess, just drifting off, and I turned around, still hold of his sleeve, and something hit me, I don't know what it was, whether a man or what it was; something hit me and knocked me off in a scale pit, and I heard him say, 'Shoot the God damned son of a bitch, kill him.' . . I did not have hold of Bolton at the time Staples shot me. Bolton made the statements to Staples with reference to shooting when he knocked me in the pit—when Mr. Staples knocked me in the pit. Staples kicked me in the pit; he run between us and kicked backwards like that [indicating], and kicked me in the stomach, and I fell backwards. Mr. Staples did not say anything at the time, not a word that I heard. Mr. Bolton said, 'Shoot the son of a

bitch, God damn him, kill him.' After I was shot I was taken to Dr. Mauldin's office. Prof. McLeroy and Prof. Burson were about the first ones to me, and I told them to carry me to Dr. Mauldin's office, that I was shot. He had an X-ray. When I got to the corner of Dr. Mauldin's office Mr. Bolton came around the corner and tried to get to the car, and somebody held him. He wanted to get to me to kill me; said if I didn't die he would finish me; if I wasn't dead he would finish me. I was in an automobile at the time, on the street in front of Dr. Mauldin's office." A. W. Burson testified that he heard the statement made by Mr. Bolton to Mr. Staples with reference to the shooting: "He just said for him to shoot him. 'Shoot him, God damn him,' I think were. the words. I could not be positive as to the exact words." W. W. Wilson swore that immediately after the difficulty between the policeman and the defendant he saw the policeman in front of Dr. Mauldin's office, and when the defendant saw the policeman "he made a rush at him, at the automobile, like he was going to go into it. Young Humphries pulled him away. That was all I saw. Looked like he had a fighting mind on him." J. E. Cruce testified, that on the night after the difficulty he was with the defendant, and the following occurred: "I think he asked was Mr. Staples dead. I believe I told him that he was not dead, but that I didn't think he would live. He made the remark, if Mr. Sudderth was not dead he would kill him." The jury found the defendant guilty. His motion for a new trial was overruled, and he excepted.

*O. A. Nix, D. K. Johnston,* for plaintiff in error.

*W. O. Dean, solicitor-general,* contra.

BLOODWORTH, J. 1. The special grounds of the motion for a new trial are all based upon alleged errors of the court in charging in reference to "conspiracy." The plaintiff in error insists that the facts do not authorize a charge on conspiracy, and that the portion of the charge in reference thereto was argumentative; that the judge expressed an opinion on the facts, and that the charge "authorized the jury to find movant guilty without movant having participated in the act of assault made by Staples upon Sudderth." The charge is not argumentative. Nowhere in it do we find that the judge expressed or intimated an opinion on the facts. Nor is it erroneous for the other reason stated: The judge

clearly charged the jury that the defendant must be present at the scene of the crime, and must have aided and abetted the principal in the commission of the offense. A part of the charge on this branch of the case is as follows: "If you believe from the evidence, beyond a reasonable doubt, that Staples made an assault, as charged in the indictment, upon Allen Sudderth with a pistol, and that the same was a weapon likely to produce death, and that Staples intended to kill him, and that the assault was made under such circumstances as if death had ensued the offense would have been murder, then Staples would have been guilty of assault with intent to murder; and if Bolton was present, aiding and abetting him, and actually participated in the offense committed by Staples, if an offense was committed, and participated in the transaction, and was a party to the alleged murderous design, then you would be authorized to find Bolton guilty of the offense of assault with intent to murder as principal in the second degree, provided you are satisfied, beyond a reasonable doubt, that he is so guilty, under the rules which I have already given you and under the rules which I will hereafter give you. . . As stated, if you come to the conclusion in your minds, beyond a reasonable doubt, that Staples, if on trial, would have been guilty of the offense of assault with intent to murder as principal in the first degree, then you will inquire whether Bolton was present at the time, whether he participated in the transaction, and whether he was a party to a design which would have been felonious at that time, such felonious design being to commit the offense of assault with intent to murder upon the person of Sudderth, an officer who was attempting to make an arrest, if you find that he was such officer and was attempting to make a lawful arrest at the time. In order for Bolton to be guilty as principal in the second degree, it is necessary that he should participate in the transaction and also should be a party to the criminal design. It would not be necessary, however, that there should be any prearrangement between Staples and Bolton before the transaction took place. It would be necessary for you to be satisfied beyond a reasonable doubt that there was a common design." The cases of *Futch* v. *State*, 137 *Ga.* 75 (3) (72 S. E. 911), *Brooks* v. *State*, 128 *Ga.* 261 (57 S. E. 483), *Thornton* v. *State*, 119 *Ga.* 437 (46 S. E. 640), and *Kimball* v. *State*, 112 *Ga.* 541 (37 S. E. 886), are easily differentiated from

the instant case. The principle upon which those cases were based was that the defendant was not guilty of aiding and abetting, because he did not participate in the felonious design; and in this case the evidence shows that the defendant did participate in the felonious design. "A conspiracy in criminal law is a combination or agreement between two or more persons to do an unlawful act, and this may be established by proof of acts and conduct as well as by direct proof or by express agreement." *Carter* v. *State,* 141 *Ga.* 308 (80 S. E. 995); *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488). In this case, when Staples ran to the assistance of the defendant, and struck and kicked the policeman, and the defendant yelled to him, "Shoot him, Jeff, kill him, God damn him, kill him," and thereupon Jeff (Staples) drew his pistol and fired upon the policeman, this showed concert of action, showed that the minds of Bolton and Staples concurred, united in a common purpose; they conspired, "breathed together" a common intent to kill the policeman. Thus it appears that there was ample evidence to authorize the charge on conspiracy. *Turner* v. *State,* 138 *Ga.* 808, 812 (76 S. E. 349); *Walker* v. *State,* 136 *Ga.* 126 (70 S. E. 1016); *Weaver* v. *State,* supra; *McLeroy* v. *State,* 125 *Ga.* 240 (54 S. E. 125); *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21); *Stevens* v. *State,* 8 *Ga. App.* 217 (3), 218 (68 S. E. 874).

2. The evidence authorized the verdict, and the judge properly refused a new trial.

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*