## 9306. BROOKS v. THE STATE.

The recent possession of the stolen property by the defendant having been fully explained by the uncontradicted testimony of several witnesses in his behalf, the evidence did not authorize the verdict, and the court erred in overruling the motion for a new trial. *Williams* v. *State,* 125 *Ga.* 268 (54 S. E. 166) ; *Peeples* v. *State,* 5 *Ga. App.* 706 (53 S. E. 719).

DECIDED JANUARY 22, 1918.

Indictment for simple larceny; from Haralson superior court—Judge Bartlett. September 29, 1917.

*Griffith & Matthews,* for plaintiff in error.
*J. R. Hutcheson, solicitor-general,* contra.

HARWELL, J.   From the evidence it appears that G. W. Aber-
nathy, the prosecutor, on returning to his sawmill one Monday
morning, missed certain brass attachments of the machinery,
which he had left on it the Friday before; and that on the same
Monday morning the defendant carried these attachments to the
depot in a sack, and started to ship them to Atlanta by freight.
"He shipped them in his own name, in daylight, and made no ef-
fort to conceal the fact that he was shipping the brasses."   The
defendant was a dealer in old brass, iron, etc.   When the sheriff
came with the search warrant, the defendant agreed to release the
railroad company and give the sheriff the possession of the brasses.
The defendant was shown to have made contradictory statements
as to the person from whom he acquired the brasses.   The evi-
dence introduced on behalf of the defendant for the purpose of ex-
plaining his recent possession of the stolen goods was as follows:
A. L. Weaver testified that on the Saturday on which the brasses
were supposed to have been stolen, while he and Lloyd Perryman
were out beyond the defendant's house eating plums, Edgar Ben-
nett approached them, carrying these brasses in a sack, told them
he had been up to the defendant's house to sell them to the de-
fendant, that the defendant was not at home, and that he wanted
to sell the brasses.   Weaver paid Bennett fifty cents for the brasses
and, with Perryman's help, carried them to the defendant's house.
The defendant was not at home, and they left the brasses there.
On the following day (Sunday) Weaver returned to the defend-
ant's home, and the defendant paid him for the brass at the rate
of 12½ cents per pound.   Weaver knew the defendant was dealing
in brass and junk, and had sold him brass before this occasion.
The testimony of Perryman was substantially the same as Wea-
ver's, stated above.   The defendant also offered evidence showing
his whereabouts all during the day Saturday.   In his statement
the defendant said that he was away from home Saturday when
the brass was brought there, that he did not then know who had
brought it, that on Sunday Weaver came to his home, and he paid
him for the brass, and that on Monday he carried it to the depot
to ship; that on Tuesday he heard that the sheriff had a warrant
for him and for the brass, and on going to the sheriff he was in-
formed that the warrant was for the brass only; that he told the
sheriff that if the brass belonged to Mr. Abernathy he would let

the latter have it, and he released the railroad company. It appears, from testimony offered by the State in rebuttal, that Bennett (from whom defendant's witness claimed to have bought the brasses) had been about the prosecutor's mill many times, and had, shortly before this trial, left the county for Idaho.

It is not necessary to add anything further to the headnote.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*