784

DECIDED NOVEMBER 4, 1933.

*Oliver & Oliver*, for plaintiff in error.

*John A. Boykin*, solicitor-general, *J. W. LeCraw, John H. Hudson*, contra.

MacINTYRE, J.   A Ford victoria coupé was stolen in Atlanta on May 31, 1932.   On July 9, 1932, this car was found in the possession of the accused at Gainesville, Georgia, by George Holley, who was connected with the police department of the City of Atlanta.

The witness Holley testified in part that the "motor number on the block had been changed;" that "he [accused] told me that day he bought the car from a party and paid him $300 for it, and I asked him who this party was, where he lived, and all about it, and he could not tell me his name or address, or anything about it;" that on July 16, 1932, he recovered from the accused another stolen car, a Ford coach, which had been stolen from Atlanta the year before; that he thought he had gotten a third stolen car from the accused, and that the accused said witness had taken a stolen car from him before the two cars above mentioned.

N. Lee, deputy sheriff of Hall county, testified that he was with the witness Holley when the stolen coupé was found in the possession of the accused, and, "the best I remember," the accused said he did not know the name of the man from whom he bought the coupé, or where he lived.

H. O. Tate, sworn for the defendant, testified that the defendant was his brother; and that, "I remember about June of last year that Frank L. Fitts, from Dahlonega, with a Ford victoria coupé, tried to trade this car to me, and afterwards my brother at Lula traded with him for the car—bought it back from him afterwards. Later Mr. Holley recovered that car."

Elmer Williams, sworn for the defendant, testified that he went with the accused in June or July of last year to Dahlonega, and the accused "traded a tractor for a car up there with Frank Fitts, and I drove a Ford victoria coupé back from Dahlonega."

Frank Fitts, sworn for the defendant, testified that he had known the accused "most of his life;" that witness sold him the Ford victoria coupé described in the indictment; that witness bought the coupé from Will Day for $300; that Day had given him a bill of sale for the same (later introduced in evidence); and that he sold the car for the same amount he gave for it. Later in his testimony the witness said: "When I sold it to him it was a cash consideration. I was to get $300." Still later the witness testified: "What I swapped was a caterpillar tractor. He asked me to wait, and said he would sell the tractor and get the money. Both of these automobiles did not figure in that transaction. I sold him the Ford coach and turned the coach over to Gold. I got the coach from Gold—from Mr. Tate. That was the first time that I had owned that automobile . . " There was also testimony as to the good character of the defendant.

The defendant's statement to the jury was as follows: "I wish to say I never bought or had a stolen automobile in my life, knowing anything about it being stolen. I never had one, and never did such a thing. These automobiles that Mr. Fitts had,—I never had any dealing with him about any automobile only the two cars,—one he brought over there, and I traded with him in fair good faith—honestly bought them and paid him for them, and agreed to pay for them, until this come up. I didn't say a word in the world when Mr. Holley come up there. I had never thought of having a stolen [car]—that car was stolen. When he proved it was stolen, just showed me how he claimed it was stolen, I let him have it. I let Mr. Holley have the car, not the sheriff, and I turned it over to him, and I am not guilty."

The defendant's guilt of the crime of larceny of an automobile being wholly dependent upon the inference arising from the recent possession of the stolen property after the larceny, it is sufficient, to avoid a conviction, if the defendant shows that the property came into his custody in any other way than by larceny. *Williams v. State*, 125 *Ga.* 268, 269 (54 S. E. 166). And if it had been shown by uncontradicted and unimpeached evidence that the de-

fendant traded with Frank Fitts for the stolen automobile, and that the defendant's possession was not the guilty possession of larceny, the jury could not have arbitrarily disregarded such evidence. However, in *Gibbs* v. *State,* 8 *Ga. App.* 107, 108 (68 S. E. 742), Judge Russell, speaking for the court, said: "If the witness who corroborated the defendant's statement had been impeached or discredited in any way, we should not feel authorized to disturb the verdict. If there were any circumstance which would supply a reason why the jury did not believe this witness, we would not interfere. If there had been any testimony that the witness was unworthy of belief, on account of general bad character or of a conflict between different portions of the witness's own testimony, —if the witness had made contradictory statements either previously or upon the trial, or if there had been any evidence directly or circumstantially in conflict with her testimony, the verdict would be authorized; but a jury can not arbitrarily disregard testimony which is wholly unimpeached and not contradicted, unless it is in relation to a matter which is unreasonable or impossible."

In the instant case, the corroborating witnesses, Tate and Williams, contradicted each other as to where the accused bought the stolen coupé. The corroborating witness Fitts made contradictory statements in different portions of his testimony. These conflicts and the other circumstances connected with the case authorized the jury to say that the explanation of the accused as to his recent possession of the stolen automobile was not satisfactory. See *Ford* v. *State,* 92 *Ga.* 459, 461 (17 S. E. 667); *Dixon* v. *State,* 26 *Ga. App.* 13 (4) (105 S. E. 39); *Hudson* v. *State,* 121 *Ga.* 147 (48 S. E. 903). The verdict of guilty having been approved by the trial judge, this court will not interfere with his discretion in refusing to grant a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*