DECIDED APRIL 11, 1940.

Larceny of cow; from Candler superior court—Judge Hardeman.

*Kirkland & Kirkland,* for plaintiff in error.

*W. H. Lanier, solicitor-general,* contra.

MACINTYRE, J. Horace Moxley was convicted of cattle-stealing. His motion for new trial was overruled, and he excepted. The evidence was to the effect, that "in the evening part of the day on September 15, 1939," the defendant got possession of the cow in question; that early in the morning of September 16, about 7 or 7:30 o'clock, the defendant sold the cow at the stock-yard in Lyons, Toombs County, Georgia, about forty miles from the place where the cow was missing, having arrived at the stock-yard before the buyer thereof had reported for duty. Recently thereafter the defendant was arrested and placed in jail in Candler County, the county in which the prosecutor lived and the county in which the larceny was alleged to have taken place. At the time of the defendant's arrest he knew what the arrest was for, but he did not state where and from whom he had obtained the cow. On the morning after his arrest, however, the officers "told him we were going to take him back over there [Toombs County] to find out where the cow was stolen from, and if stolen over there we would leave him over there." The defendant did not disclose from whom he contended he had purchased the cow in Candler County, but in his statement to the jury on the trial he said that he caught up with a gentleman; that his tire was blown out, and he was trying to fix it; that the gentleman asked the defendant if he would be interested in buying a cow, and the defendant replied he would if he could get it reasonably; and that the gentleman said he would take $10 for it, but they finally agreed on $8 and closed the trade at

that price.  The defendant closed his statement by saying: "I bought it in good will, thinking it was all right; and he said he lived at Collins.  I don't know where he lived.  I had never seen the man before; yet still I bought it with good faith, and I ask you jurors—I thank you all for your attention.  I ask the jury to be merciful.  That is all I know about it."  The defendant's step-brother testified that he was present when the defendant made the trade with a stranger who said his name was Bill Heywood and that he was from Collins, Georgia.  However, on cross-examination by the solicitor-general, he stated: "I remember you asking me if I was summoned in this case, the Moxley case; and I remember you asking me what I knew about it, and I told you I wasn't going to talk, didn't I?  I told you it wasn't best to talk too much.  As to why it was I didn't want them to tell you about seeing this transfer of the cow—well, I didn't think you were trying the case then, and had no right to know.  I didn't think you had any right to know whatever."  Another witness, Gary Renew, testified that he came along the road as the defendant was negotiating with a stranger for the sale of a cow that looked like the one in the picture which was identified as a picture of the stolen cow, but he did not state the name of the stranger or where he lived.

It will be noted that the defendant said at the trial that he had bought a cow off a truck on a public road from a stranger whose name he did not state, but that the stranger said he was from Collins, Georgia.  His stepbrother said that the stranger gave his name as Bill Heywood, and was from Collins, Georgia.  However, the defendant did not disclose from whom he had bought the cow until the trial, and his stepbrother, a few days before the trial, had in effect refused to tell the solicitor-general what, if anything, he knew about the alleged stolen cow, or from whom the accused contended he had bought it.  The other witness for the defendant testified that he was present at the negotiations preliminary to the actual sale.  We can not but think that under the circumstances the jury had a right to believe that the defendant and his witnesses failed and refused to disclose from whom they claimed to have bought the cow, with the ulterior motive that if the State's offices obtained this information they could check up on its truthfulness, and ascertain whether or not he had in good faith bought a cow from a man by the name of Heywood.  The defendant's evidence did not disclose

that the State had any opportunity to ascertain the truthfulness of such statement. Indeed, it might have been impracticable to investigate its truthfulness while the trial was in progress and before its termination. We think the circumstances were such as to supply a reason why the jury should not believe the defendant and his witnesses. We do not think this case comes under the rule that the jury arbitrarily disregarded testimony which was wholly unimpeached and uncontradicted, or at least not discredited; for the jury might have considered the concealment of the name of the person from whom the defendant claimed to have bought the cow until the actual trial as discrediting his statement that he had bought the cow in good faith. *Gibbs* v. *State,* 8 *Ga. App.* 107, 108 (68 S. E. 742); *Tate* v. *State,* 47 *Ga. App.* 784 (171 S. E. 557). The special grounds of the motion for new trial are not meritorious.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*