## 33572. ANNIS *v*. THE STATE.

DECIDED NOVEMBER 26, 1951. REHEARING DENIED DECEMBER 17, 1951.

*Jackson & English, Robert R. Forrester,* for plaintiff in error. *Edward Parrish, Solicitor-General,* contra.

MACINTYRE, P. J. ■ The defendant was convicted of burglary. The jury was authorized to find that the corpus delicti had been proved as alleged in the indictment. The pressure here is not on whether the burglary had been committd, but whether the defendant was guilty of the burglary as charged in the indictment.

The jury was authorized to find that on Sunday, October 29, 1950, between 8:30 p.m. and 6:30 the next morning the burglary was committed; that the defendant, Tom Annis, and Perk Griffin were together the night of the burglary, from "just about night until 9 p.m."; that Griffin rode home with the defendant at about 9 p.m.; that the defendant and Pink Best met at about

11 p.m. on the night of the burglary in a negro section of Tifton, near a restaurant operated by Lee Williams's sister; that there Lee Williams joined them and Pink Best and Lee Williams went off in the defendant's car, and subsequently came back with 200 cartons of cigarettes which were later identified as some of the cigarettes stolen in the burglary here charged, that thereupon Pink Best and the defendant went to the defendant's house and there got into the car of the defendant's brother and went to Perk Griffin's house; that on Monday, at about 10 a.m., the defendant, accompanied by Pink Best, delivered 100 cartons of cigarettes to Perk Griffin, and these were later identified as being part of the cigarettes stolen in the burglary in question; that a few days later Lee Williams was arrested and 50 cartons of the stolen cigarettes were found in his possession; that when the cigarettes which Griffin had purchased were found in his house, on Friday after the burglary on Sunday night, Griffin told the officers he had bought them from the defendant; that the officers thereupon went to the defendant's house with a search warrant, but found no cigarettes, and when they told him what Griffin had said, the defendant said that Griffin was "a liar"; that on a second occasion the defendant emphatically denied that he had sold the cigarettes to Griffin, but when the officers confronted the defendant with Griffin, the defendant admitted that he had sold Griffin the 100 cartons of cigarettes on the night of the burglary and had delivered them the next morning, Monday; that when the defendant was asked "about the two cases that were left after selling Perk [Griffin] two cases—[that is] what he did with the other two [cases], he claimed that he burnt them," because, after he heard of the burglary in question, he did not wish to be found in possession of the cigarettes; that when Griffin discovered that the cigarettes which he had bought from the defendant were unstamped, he took the matter up with the defendant and the defendant went to Tifton with Griffin and looked up Pink Best and told him the situation with reference to the cigarettes being unstamped; that Best thereupon saw Lee Williams and returned with tax stamps which were also identified by their serial numbers as having been stolen in the burglary in question, at the same time the cigarettes were stolen; that thus the defendant and Pink Best, Perk Griffin, and Lee Williams were all

found in possession of some of the stolen goods recently after the burglary, that the physical conditions at the scene of the burglary showed that more than one person participated therein.

The defendant undertook to explain his possession by saying that his meeting with Pink Best at about 11 on the night of the burglary was purely coincidental; that while he and Best were talking, Lee Williams came up and offered to sell him some cigarettes at a bargain; that they traded and the defendant got out of his car and sent Best and Williams to get the cigarettes; that they returned with 200 cartons, and the defendant, accompanied by Best, went to his home to get the money to pay for the cigarettes and not having enough money for this purpose, he took some of his wife's money; and, still accompanied by Best, the defendant went to the home of Perk Griffin at about 11:30 and woke him and offered to sell him some of the cigarettes at the same bargain price at which he had obtained them, $1.25 per carton; that Griffin lent him, the defendant, $250, but the agreement was that he would deliver 100 cartons to Griffin and repay Griffin $150 upon the delivery of the cigarettes, and he would keep 100 cartons; but, Griffin's testimony was that the defendant did not repay him the $150 on the next day after the burglary when he delivered the cigarettes to him, and that the defendant repaid the $150 only after both the defendant and Griffin were arrested and under bond. The jury obviously did not accept the defendant's explanation and convicted him of burglary.

"The recent, absolute, and unexplained possession of property stolen from a house proved to have been burglarized may be sufficient to authorize a conviction of burglary, but the presumption of guilt arising from proof of such facts is not one of law." *Cuthbert* v. *State*, 3 *Ga. App.* 600 (60 S. E. 322); *Lundy* v. *State*, 71 *Ga.* 360.

It seems to us that from all of this contact with each other and the possession of the cigarettes by the defendant, Best, Williams, and Griffin on the night of the burglary, when considered with the circumstances connected therewith, the jury was authorized to find that there was a conspiracy between these men to commit the burglary charged in the indictment.

"In criminal law, conspiracy is a combination or agreement between two or more persons to do an unlawful act, and may be

established by proof of acts and conduct, as well as by direct proof or by express agreement." *Bolton* v. *State,* 21 *Ga. App.* 184 (94 S. E. 95).

There is no such crime as conspiracy under our law, but one may be found guilty of a crime caused by acts pursuant to an already formed conspiracy. The crime is the act prohibited by statute, not the conspiracy alone. *The conspiracy of itself ·is no crime.* " 'The crime is that prohibited by the statute, and the conspiracy is referred to as an incident, and one of the means by which the act is accomplished.' *Bishop* v. *State,* 118 *Ga.* 799, 802 (45 S. E. 614)." *Randall* v. *State,* 73 *Ga. App.* 354, 370 (36 S. E. 2d, 450).

Conspiracy being an incident and one of the means by which a criminal act is accomplished, in order to authorize the court to charge on conspiracy, it is enough if there be evidence from which a legitimate inference can be drawn that there was a combination between two or more parties to do an unlawful act (this is the conspiracy) and that the combination was the means by which the criminal act was accomplished, and this inference may be drawn from proof of acts and conduct as well as by direct proof or express agreement.

" 'It is seldom that any one act, taken by itself, can be seen as tending to prove a conspiracy, but when taken in connection with other acts, its tendency to prove the fact may be more clearly discerned. We may be satisfied from circumstances attending a series of criminal acts, that they result from concerted and associated action, although if each circumstance was considered separately, it might not show confederation; but, where linked together, circumstances that in themselves are inconclusive, yet taken as a whole, may show that apparently isolated acts spring from a common object and have in view the promotion of a common purpose.' 2 Wharton's Criminal Evidence (10th ed.), § 888." *Nelson* v. *State,* 51 *Ga. App.* 207, 211 (180 S. E. 16).

Frequently among the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts. *Randall* v. *State,* supra.

The defendant contends that the rule, that the jury is forbidden to arbitrarily disregard direct and positive testimony

which is wholly unimpeached, not contradicted, and in no way discredited, is applicable to the instant case, under the authority of *Gibbs* v. *State*, 8 *Ga. App.* 107 (68 S. E. 742), *Hampton* v. *State*, 6 *Ga. App.* 778 (65 S. E. 816), and certain other cases to the same effect upon which he relies in his brief.

The State contends that the following rule is applicable: Where a defendant is charged with burglary and the corpus delicti has been proved, if the defendant's guilt is wholly dependent upon an inference arising from the possession of some of the described stolen property recently after the burglary, and this possession is shown by direct, uncontradicted and unimpeached evidence to be consistent with the defendant's innocence, such evidence should be credited and have the effect of overcoming the mere presumption arising from such possession of the property alleged to have been stolen in the burglary; *but,* that where the witnesses' testimony is contradicted by circumstances that can be taken as incompatible with such direct evidence as referred to above, the courts and the juries are not bound to refrain from exercising their own judgments and blindly adopt the statement of a witness or witnesses for the simple reason that no other witness has denied the testimony and that the character of such witness has not been impeached. *Goldwire* v. *State*, 56 *Ga. App.* 379 (192 S. E. 643); *Lankford* v. *Holton*, 187 *Ga.* 94, 102 (200 S. E. 243); *Fortson* v. *State*, 69 *Ga. App.* 378 (25 S. E. 2d, 820); *Cooper* v. *Lumbermen's Mutual Casualty Co.*, 179 *Ga.* 256, 261 (175 S. E. 577); *Anderson* v. *State*, 50 *Ga. App.* 182 (177 S. E. 526); *Detwiler* v. *Cox*, 120 *Ga.* 638 (48 S. E. 142).

Since the jury was authorized to find that Best, Williams, and the defendant participated in the conspiracy to burglarize during the existence of such conspiracy, it would necessarily follow that the rule in the *Gibbs* case and the *Hampton* case, together with the other cases to the same effect relied upon by the defendant, is not applicable in the instant case for the reason that the testimony of Williams and Best was necessarily contradicted by circumstances which the jury was authorized to find were incompatible with the truth of their testimony and the jury was not compelled to blindly accept the testimony of those two witnesses for that reason. Furthermore, it might be added that the rule in the *Gibbs* and *Hampton* cases is not applicable to Williams's

testimony for the reason that on the day before the present defendant's trial, Williams had been convicted of a felony involving moral turpitude (burglary) which was sufficient reason to cause the jury not to believe his testimony.

Under all the circumstances of the case, the jury was authorized to find the defendant guilty as charged.

■ From what has already been said with respect to conspiracy in the foregoing division of this opinion, it follows that the assignments of error in special grounds 2 and 6 (numbered 5 and 9), upon the ground that there was no evidence of a conspiracy such as to authorize the court to charge the jury on the subject, are without merit.

■ Special ground 1 (numbered 4) is expressly abandoned by the defendant in his brief and will not be considered. Code § 6-1308.

■ In special grounds 3 and 4 (numbered 6 and 7) error is assigned upon the following excerpts from the charge of the court: "Now, gentlemen, I charge you further in this case, that the recent possession of goods stolen or feloniously taken, if not satisfactorily explained, is sufficient to authorize a conviction in cases of larceny from the house and burglary where the corpus delicti is established. . . The mere fact, gentlemen, that you believe that the warehouse was broken into and property stolen therefrom would not authorize you to find the defendant guilty unless you are also satisfied that he was the person who committed the offense alleged to have been committed and as charged in the indictment; and in determining the question as to whether he was the person who wrongfully and fraudulently did break and enter this building you may consider, if the evidence shows it, the recent possession of the defendant of property alleged to have been stolen, the law being that the unexplained, or unsatisfactorily explained, possession of property the fruit of a recent larceny or burglary raises a presumption of guilt against the possessor. The presumption, however, is one of fact and not of law. It would authorize a conviction unless the possessor can make an explanation of his possession of the stolen goods consistent with innocence." These excerpts complained of are not subject to the criticism that they instruct the jury that as a matter of law the defendant would be guilty as

the result of the possession of recently stolen property, the possession of which is unsatisfactorily explained, but only instructs the jury that such possession is sufficient to authorize the jury as a matter of fact to find the defendant guilty. *Harris* v. *State*, 47 *Ga. App.* 864 (171 S. E. 871); *Morris* v. *State*, 47 *Ga. App.* 792 (171 S. E. 555); *Cook* v. *State*, 49 *Ga. App.* 86, 88 (174 S. E. 195).

■ In special ground 5 (numbered 8) error is assigned upon the following excerpt from the charge of the court to the jury: "I charge you further, now, gentlemen, in this case on the subject of admissions: An admission as applied to a criminal case is a statement by the defendant of a fact or facts pertinent to the issue, and tending, in connection with proof of other facts or circumstances to prove the guilt of the accused, but which is of itself insufficient to authorize a conviction. An admission is a circumstance which requires the aid of further testimony to generate a reasonable conclusion of guilt." The error assigned upon this excerpt from the charge is that it "is not a full and complete statement of the law with reference to admissions in the case and that the failure of the court to charge that the 'other facts or circumstances to prove the guilt of the accused' must of necessity be such facts or circumstances as directly· connects the defendant with the perpetration of the offense of burglary as charged, [and] the failure to charge the jury that an admission, even though coupled with the proof of other facts or circumstances, unless such other facts or circumstances directly connects the defendant with the perpetration of the offense of burglary, tended to place a greater burden upon the defendant than is authorized by law and tended to authorize a conviction even though such other facts or circumstances did not directly connect the defendant with the perpetration of the offense."

In the brief of counsel for the defendant, it is conceded that the charge complained of presented a correct abstract principle of law, and we think the charge on the subject of admissions was full and fair, and if the defendant had wished a more detailed charge on the subject a timely written request therefor should have been interposed. This ground of the motion for a new trial is not meritorious.

The trial court did not err in overruling the motion for a new trial for any reason assigned.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the whole court consider any case in which one of the judges of a division dissents, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., Gardner and Worrill, JJ., concur. Felton and Townsend, JJ., dissent.*

TOWNSEND, J., dissenting. I agree that the evidence here demands a finding that the place of business was burglarized on Sunday, October 29, 1950, or Monday morning, October 30, 1950, between the hours of 8:30 p.m. and 6:30 a.m., and that the corpus delicti was established; also, that valuable merchandise was taken from the premises, including a large quantity of cigarettes and cigarette stamps. It is the contention of the prosecution that the evidence is sufficient to support the verdict against this defendant because recently after the burglary a part of the stolen property was found to have been in the possession of the defendant. *Hobbs v. State*, 38 *Ga. App.* 205 (143 S. E. 509). However, the evidence here discloses that the defendant went to Tifton about 11 o'clock on the night of October 29 to a restaurant in the negro section of the town operated by a sister of one Lee Williams to try to locate a plumber; that there he saw Perk Best whom he knew and of whom he inquired as to the whereabouts of the plumber; that Lee Williams at this point came up and informed him that he knew where a large quantity of cigarettes could be procured at a bargain; that the price was agreed on and Lee Williams and Perk Best went in the defendant's automobile to the home of Lee Williams's brother where Lee Williams got four cases of cigarettes which were put in the defendant's automobile; that upon their return to the Williams restaurant where the defendant had waited for them, Perk Best went to the home of the defendant at Lennox where the defendant gave Perk Best the money for the cigarettes; that about 12:30 the defendant went to the home of Etheridge (Pink) Griffin and contracted with him for the sale of two cases of the cigarettes which he delivered about 10 a.m. the following morning; that on Tuesday following the burglary the defendant, having heard about it, informed the sheriff that he had procured some cigarettes from Lee Williams and that Lee Williams could

probably give him information as to where they came from; that thereafter the defendant was accosted by the sheriff and other investigating officers who informed him that Griffin stated he had purchased cigarettes which were a part of the proceeds of the burglary from the defendant; that thereupon the defendant first denied this, but upon later being confronted by Griffin admitted it. The defendant also stated to the officers that he had destroyed the other two cases of cigarettes which he obtained from Williams and which he did not sell to Griffin because he did not want to be found with them.

These facts are testified to by Williams and Best. The record discloses that on the day before Annis was tried, Williams was convicted of this burglary. The jury was therefore authorized to disregard the testimony of Williams. *Sheffield* v. *Hammond,* 41 *Ga. App.* 76 (151 S. E. 663); *Doggett* v. *Simms,* 79 *Ga.* 253 (4 S. E. 909). However, there is no evidence from which it can be deduced that Best had any connection with the burglary, or that he entered into any conspiracy with anybody which culminated in its commission. In my opinion Best stands as an unimpeached witness. He was not charged with having participated in the burglary.

Also it is my opinion that the association of Annis and Griffin between dark and 9 p.m. the night of the burglary in no way supports any connection with the burglary of Griffin. He likewise was not charged with its commission and the record in my opinion discloses no evidence connecting him with it. In *Hampton* v. *State,* 6 *Ga. App.* 778 (65 S. E. 816) it is held as follows: "The defendant's guilt of the crime of burglary being wholly dependent upon the inference arising from the possession of stolen goods after the burglary, and this possession being shown by uncontradicted and unimpeached testimony to be consistent with defendant's innocence of burglary, though he may have been guilty of receiving stolen goods, the verdict was contrary to the evidence, and a new trial should have been granted."

In *Gibbs* v. *State,* 8 *Ga. App.* 107 (68 S. E. 742), the above language is substantially adopted as the second headnote. On page 108 it is further held as follows: "Upon the evidence submitted the conviction of the defendant was not authorized. The

corpus delicti was proved, it is true, but the only circumstance connecting the defendant with the perpetration of the offense was the possession of part of the stolen property and this possession was so explained by uncontradicted testimony as necessarily to rebut the inference arising from possession of the stolen property. The decision must be controlled by the ruling in *Hampton* v. *State*, 6 *Ga. App.* 778 (65 S. E. 816), and similar cases. If the witness who corroborated the defendant's statement had been impeached or discredited in any way, we should not feel authorized to disturb the verdict. If there were any circumstance which would supply a reason why the jury did not believe this witness, we would not interfere. If there had been any testimony that the witness was unworthy of belief, on account of general bad character or of a conflict between different portions of the witness's own testimony—if the witness had made contradictory statements either previously or upon the trial, or if there had been any evidence directly or circumstantially in conflict with her testimony, the verdict would be authorized; but a jury cannot arbitrarily disregard testimony which is wholly unimpeached and not contradicted, unless it is in relation to a matter which is unreasonable or impossible. If, upon another trial, the witness is shown by testimony to be unworthy of credit, for any legal reason or by any method provided by law, the testimony delivered upon this trial might be discredited and the jury authorized to disregard it; but in the absence of some testimony to this effect upon the trial now under review, it appears to us that the jury merely arbitrarily disregarded uncontradicted and unimpeached evidence; and it is beyond their power to do this in any case."

While the defendant first made a contradictory statement in which he denied the sale of the cigarettes to Griffin, it appears to be well settled that this does not so adversely affect the testimony of an unimpeached witness explaining possession of property recently stolen as to authorize the defendant's conviction. See *Brooks* v. *State*, 21 *Ga. App.* 661 (94 S. E. 810) ; *Slaughter* v. *State*, 24 *Ga. App.* 428 (100 S. E. 774) ; *Willis* v. *State*, 33 *Ga. App.* 352 (126 S. E. 303). I do not think the conduct of the defendant subsequent to the burglary in making a prior contradictory statement and in destroying the property not otherwise

disposed of is sufficient to authorize his conviction, especially when construed with other acts and conduct of the defendant in giving evidence and advance information to the sheriff, and in procuring stamps for the cigarettes after acquiring them and learning that they were unstamped, not under circumstances of secrecy. I think therefore that the trial court erred in charging the jury on the subject of conspiracy as complained of in special grounds 5 and 9 of the amended motion for a new trial. I also think that the evidence fails to support the verdict and that the case should be reversed on the general grounds.

### On motion for rehearing.

MacIntyre, P. J. If the defendant was found in the possession of the cigarettes recently stolen from the building at the time of the burglary in question, such possession is sufficient to connect the defendant with the perpetration of the offense of burglary. While not of itself conclusive, it would authorize, but not require, the jury to infer that the defendant was guilty unless he explained his possession of the cigarettes to the satisfaction of the jury. *Gravitt* v. *State*, 114 *Ga.* 841 (40 S. E. 1003) ; *Morris* v. *State*, 47 *Ga. App.* 792 (171 S. E. 555) ; *Lewis* v. *State*, 120 *Ga.* 508 (48 S. E. 227).

The jury was unquestionably authorized to find that the defendant, Annis, was in the possession of the recently stolen cigarettes in question, stolen at the time of the burglary. The defendant says his possession was explained by the direct and positive testimony of Lee Williams and Perk Best and that the jury is forbidden to arbitrarily disregard such testimony which was wholly unimpeached, uncontradicted, and in no way discredited, and that the jury, in finding him guilty, violated the rule that uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded. This rule was not applicable to the testimony of Lee Williams for a least one reason, because Williams had been discredited by a conviction of a felony involving moral turpitude. The burglary was committed on Sunday night and the jury was authorized to find, relative to the witness Perk Best, that on this same night, the defendant and Best met at about 11:30 p.m.; that they soon were joined by Lee Williams; that Best and Williams departed in the defendant's car, Best driving; that they returned with two cases of the cigarettes

which had been stolen from the building in question and thereupon Best and the defendant went to the home of the defendant, unloaded the cigarettes and then changed cars, using the car of the defendant's brother, to go to the home of Pink Griffin, several miles away; and, at about 12:30 at night the defendant bargained with Griffin to sell, below cost, some of the cigarettes which had been stolen from the building in question; Best accompanied the defendant on this trip; the cigarettes bargained for were to be delivered to Griffin the next day, Monday; when the cigarettes were accordingly delivered at about 10 a.m., Best again accompanied the defendant; and when it was later discovered that the stolen cigarettes had not been stamped, at the suggestion of the defendant, he and Griffin went to Tifton to see Best to obtain stamps for such cigarettes; they found Best and he went away and returned with Williams and delivered to them the stamps for the cigarettes; that it developed that these stamps, which they obtained from Best were stamps which had been stolen at the same time and place that the cigarettes themselves had been stolen.

Thus Best seems to have been connected with the possession of the stolen cigarettes and stamps from the night of the burglary until the cigarettes were delivered to Griffin on Monday and the stamps were delivered to him on Tuesday.

If, in fact, Best was a co-conspirator and participated as such in the burglarious enterprise, the fact that he testified for the State and was not indicted does not change the situation so as to prevent the jury from finding that such acts as were done by Best were in the prosecution of the burglarious enterprise in question; nor does the further fact that Griffin was indicted and pleaded guilty or was convicted of receiving stolen goods change the situation. Thus, if the jury was authorized to find that Best was a co-conspirator in the perpetration of the burglary, the jury was authorized to discredit his testimony, and the rule against arbitrarily disbelieving a witness, as here sought to be invoked, is not applicable.

This and all other matters in the motion having been considered, the motion for rehearing is denied.

*Rehearing denied. Sutton, C. J., Gardner and Worrill, JJ., concur. Felton and Townsend, JJ., dissent.*