No. 27.—JAMES L. HESTER, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] [2.] [3.] An indictment which states the offence in the language of the Code is sufficient.

[4.] On the trial of an indictment the panel is put upon the accused. Afterwards, he is arraigned and pleads not guilty. Then the panel is again put upon him : *Held*, that there is no error in this.

[5.] On the trial of an indictment for arson, a witness swore as follows: "witness believes this was defendant's track, because he has been a good deal with defendant; has noticed his track and never saw any body else that made a track exactly like defendant does. Defendant's toes turn out in walking more than any person's he ever saw. The track witness followed turned out like prisoner's, and was about the same size" : *Held*, that this was legal evidence.

[6.] Imprisonment in the penitentiary for three years, is not too great a punishment for the burning, by night, of an out-house not in a city, town or village.

Arson, in Taylor Superior Court.    Tried before CRAWFORD, Oct. Term, 1854.

The errors assigned are the refusal of a motion in arrest of judgment, and a motion for a new trial.

The indictment alleged that the defendant did "burn an out-house, being then and there a corn crib, on the plantation of E. F.—the said corn crib not then and there being in a town or village—by setting fire to the same." Motion in arrest—

1st. Because it did not allege that the house was consumed.

2d. Because it did not allege that it was in the day time or at night.

Hester *vs.* The State.

3d. Because it did not allege that the out-house was not a dwelling house.

The motion for a new trial was on the grounds, 1st. That the Solicitor arraigned the prisoner after a panel of 48 Jurors had been called and put upon him; and after the arraignment the Court allowed the panel to be put upon the prisoner again.

2d. That the Court erred in allowing two witnesses to give their opinion, that certain foot prints were those of prisoner—they having given their reasons for the opinion.

3d. Because the verdict was contrary to the weight of evidence.

The evidence was briefly as follows:

The corn crib was burned about 3 o'clock in the morning. It was not contiguous to any house, and was evidently set on fire. The owner of the crib was an acting bailiff, and had, the day before the burning, as bailiff, sold the corn of prisoner under a *fi. fa.* Prisoner said that day to prosecutor, that if he sold his corn he should pay for it, and suffer for it. Threats of a similar character were proved by several witnesses. Foot prints, going to and from the burned house, through ploughed ground, were proven to be similar to prisoner's, who had a peculiar walk—turning out the toes more than with men usually. Confessions of prisoner, that he burned the house at the instance of one Dukes were also in evidence. He was drinking at the time, though not drunk. There was an attempt made to impeach the two witnesses who proved these confessions. Dukes was introduced by prisoner, and disclaimed all knowledge of it. Prisoner also attempted to prove an *alibi*.

The refusal to arrest the judgment and grant a new trial are assigned as error.

The Court sentenced the prisoner to imprisonment in the penitentiary for *three* years. This sentence is also assigned as error.

S. HALL and G. R. Hunter, for plaintiff in error.

RAMSEY and B. HILL, for defendant in error.

Hester *vs.* The State.

*By the Court.*—BENNING, J. delivering the opinion.

Should the motion to arrest the judgment have been sustained?

The first ground on which the motion was put, was that the indictment did not allege the house to have been *consumed.* What the indictment alleged was, that the accused "did" "burn" the house.

To burn has for its first and leading meaning, in Webster's Dictionary, "to consume with fire."

The word is commonly used, too, in that sense.

It is to be presumed, therefore, that it was so used in the indictment.

[1.] At all events, it is the word used in the definition of the offence of arson, and that justifies the use of it in the indictment. "Arson is the malicious and wilful burning of the house or outhouse of another." (*Code. Cobb's Dig.* 789.) "Every indictment or accusation of the Grand Jury, shall be deemed sufficiently technical and correct, which states the offence in the terms and language of the Code, or so plainly that the nature of the offence charged may be easily understood by the Jury." (*Code,* 1 *sec.* 14 *div. Cobb's Dig.* 833.)

The second ground on which the motion was put, was the omission from the indictment of any allegation, to show whether the arson charged was arson in the day-time or arson in the night.

The distinction between these two sorts of arson is confined, by the Code, to *punishment*—the degree of punishment. The *definition* of arson, as given above, is silent as to any such distinction.

[2.] The indictment "states the offence in the terms and language of" the definition.

The third ground on which the motion was put, was the omission, from the indictment, of an allegation, that the house burned was not a *dwelling house.*

The indictment did have in it an allegation, that the house

burned was an out-house and a .corn crib.   And this is equiva-
alent to an allegation, that the house was not a dwelling house.

[3.]  Besides, the exception (" except the dwelling house")
which the motion insists should have been negatived in the in-
dictment, is not contained in the section defining the offence,
but in a subsequent section, designating the punishment for the
offence.   *Elkins vs. The State,* (13 *Ga. R.* 439.  1 *sec.* 14
*div. Code.*)

These were all the grounds of the motion to arrest the judg-
ment ; and none of them being sufficient, the Court was right
in over-ruling that motion.

Ought a new trial to have been granted ?

[4.]  There is, plainly, nothing in the first ground assigned
in the motion, for a new trial.

In the second ground there is something, but not enough, as
we think, to support the motion.    This conclusion, however, is
one at which we arrive not without difficulty.

That the opinions of a witness are not admissible in evi-
dence, is, as a general proposition, undoubtedly true: yet, that
to this proposition are many exceptions, is no less true.    The
general law on the question of the admissibility of this sort of
evidence, is stated by *Greenleaf,* in his work on Evidence,
thus: "And though the opinions of witnesses are, in general,
not evidence ; yet, on certain subjects, some classes of witness-
es may deliver their opinions, and on certain other subjects,
any competent witness may express his *opinion or belief,* and
on any subject to which a witness may testify, if he has any
recollection at all of the fact, he may express it as it lies in his
memory, of which the Jury will judge.    Thus, it is the con-
stant practice to receive in evidence any witness's belief of
the identity of a person, or that the hand-writing in question is
or is not the hand-writing of a particular individual, provided he
has any knowledge of the person or hand-writing ; and if he
testifies falsely, as to his belief, he may be convicted of perjury."
And he gives other instances.    (1 *Greenleaf's Ev.* §440.)

The opinions of the two witnesses which were received in
this case, were opinions on a question of personal identity—on

ths question, who was the person that had made certain foot-
prints or "tracks," found in a field near the site of the burnt
house. The bill of exceptions thus gives the testimony, on this
point, of one of those witnesses:."Witness believes this was
defendant's track, because he has been a good deal with de-
fendant—has noticed, his track, and never saw any body else
that made a track exactly like defendant does. Defendant's
toes turn out, in walking more than any person's he ever saw.
The track witness followed turned out like prisoner's, and was
about the same size."

In this statement, the witness gives his belief, and his rea-
sons for that belief, which is more than a witness is required
to do, to render his opinion, as to hand-writing, admissible; for
to render a witness's opinion admissible, as to hand-writing, it
is only necessary that he should be acquainted with the hand-
writing of the person who, in the particular case, is assumed
to be, or to be not the author of the writing in such case in
question.

Whose hand made these marks—these letters on this paper?
A B's, I believe, (says the witness,) and I am well acquainted
with the marks—the letters A B's hand makes upon paper. I
have seen him make such, his marks, often. This is good, as
evidence.

Whose feet made these marks—these tracks in the sand?
A B's, I believe, (says the witness,) and I am well acquainted
with the marks—the tracks which A B's feet make in the sand.
I have seen him make thousands of such. Why is not this
also good as evidence? What reason is there that would con-
demn this, which would not equally condemn that?

Suppose that a hat—a handkerchief—nay, one of the very
shoes which made the tracks in question, in this case, had been
picked up near the site of the burnt crib, might a witness have
been asked his opinion as to whose was the hat, the handker-
chief, the shoe—his opinion as to whether they were the hat,
the handkerchief, the shoe of the accused—the witness a per-
son well acquainted with the accused, and a person having, as
a reason for his opinion, that he had frequently seen the ac-

cused wear such a hat, such a handkerchief, such a shoe? Might a witness be asked if, in his opinion, the man whom he saw at a distance, dimly in the obscurity, fleeing from the scene of conflagration, was the accused? Might a witness be asked this, on condition that he gave his reasons for his opinion?

If a witness might give his opinion in a case of this sort, and we think he might, he may equally give his opinion in such a case as the present.

What degree of credit is due to a witness's opinion, if given in such a case, is another question.

[5.] Upon the whole, therefore, we cannot say that we think this second ground to have been such as would have justified the granting of the new trial.

The Court below sentenced the accused to imprisonment in the penitentiary for three years. This sentence is assigned for error.

Section six of the fifth division of the Penal Code, is in these words: "The wilful and malicious burning of an out-house of another, such as a barn, stable or any other house, (except the dwelling house,) on a farm, or plantation, or elsewhere, (not in a city, town or village,) shall be punished by imprisonment and labor in the penitentiary, for any term not less than two years, nor more than seven years."

Section ten of the same division is in these words; "Arson in the day-time, (except in a city, town or village,) shall be punished by a shorter period of imprisonment and labor than arson committed in the night."

What we understand by these two sections is this: the punishment for the burning of an out-house not being in a city, town or village, shall be imprisonment and labor in the penitentiary, for a term which may be as much as seven years, and which must be as much as two years, provided the burning be done in the night; but if the burning be done in the day, then the punishment shall be imprisonment and labor in the penitentiary, for a term which must be not as much as seven years, and which may be not as much as two years.

[6.] The proof shows this to have been a case of burning in

the night.   As far, therefore, as the case is concerned, it is perfectly clear that the imprisonment imposed by the Court, was for a term not too great.

So we see no error in the sentence.

Nothing else is assigned for error.   Therefore, there ought to be a general affirmance of the decisions of the Court below.