PASCHAL v. THE STATE.

1. To open the examination of a witness for the State by asking, "Do
   you know that boy over there?" pointing at the prisoner, was
   not illegal because the question was leading or for any other
   cause.
2. The evidence, though not altogether satisfactory, warranted the
   verdict, and as the presiding judge approved the finding by deny-
   ing the motion for a new trial, the          Judgment is affirmed.
   May 16, 1892.

Criminal law.   Evidence.   Before Judge RICHARD H.
CLARK.   DeKalb superior court.   August term, 1891.

Indictment against Thomas Paschal for assault with
intent to rape; conviction; exception to overruling of
the motion for a new trial.   The grounds of the motion
are, that the verdict is contrary to law and evidence, and
that the court erred in allowing the solicitor-general,
over objection of counsel for the defendant, to ask the

girl assaulted (who was a witness) the question, "Do you know that boy over there?" pointing to the defendant, whose counsel said, "That is an unfair question, and I object to it. I want her to identify him." The objection was overruled. The answer given by the witness was, "It is Tom Paschal."

The issue on the evidence is as to the identity of the defendant with the person who committed the assault. The girl assaulted was not quite nine years old. She testified that she never saw that boy before the time of the assault. On the next morning when the defendant was arrested and she was carried to identify him, she said he was not the boy. He then wore a woolly skull-cap. She had previously told her father that the boy who assaulted her had on a soft slouch hat. Her father asked her why she did not think that was the boy, and she answered that he did not have the same hat on. The defendant was then released, and the girl's father told her he was satisfied that was the boy. According to his testimony, this was all he said to her on the subject. She testified that she did not know how she came to conclude the defendant was the boy; her father talked to her and said he thought he was the boy; after she talked with her father she thought he was the boy; she thought he was not the boy when she first saw him, because he didn't look like him; she changed her mind when he was in sight; she said he was not the boy at first, but when she saw him again she said she knew it was the boy; he had on a cap when she first saw him; she does not know what he had on the next time, thinks he had on a hat. Her father testified that when she saw him the next time, he was sitting in a room containing also half a dozen other boys of his size; and she said to her father, "I know where that boy is; he is right over there behind that man," and pointed him out. It does not clearly appear where or when this occurred.

The sheriff testified that just after releasing the defendant from the first arrest, he (the sheriff) went with the girl and her father to the place where the assault was committed; and he further testified thus: "He denied to me having been out there at all, so I just thought he was not the boy. So we got in the buggy and went out to Tom Kirkpatrick's, to Bill Howard's (a darkey out there), and found out he was there; then I came back to town and went to arrest him. I heard he was at home; I went one way and Mr. Hill went the other, and I met Scruggs the preacher down here, and he told him I was hunting for him, and he just pulled out down the street and Mr. Hill struck through the woods after him, but we never caught him in ten days, and then we caught him in Atlanta." William Howard testified that the defendant was at his place on the day the assault occurred, and left there between two and three o'clock in the afternoon, going to Decatur; but witness did not know what route he went. According to the testimony of the assaulted girl, she was on her way home from the school which was at Decatur, when the assault was committed; and the boy was barefooted. Her father testified that he found lots of barefoot tracks at the place she showed him as where the crime was committed; he measured them with a stick which he handed to counsel, and which would approximate the length of the foot that made the tracks. Further on he testified: "Mr. Mercer came and told me first, and I went right up there with him and we tracked a barefoot boy opposite Dr. Goss's office, and there we lost the track." The sheriff testified that he did not know how old the defendant was; should think, though, he was over fourteen; remembered him eight or ten years; then he was running all about the streets. The defendant introduced no evidence. He stated that his father sent him out to Bill Howard's for some seed, and he went out there in How-

v 89-20

ard's wagon, got the seed, played around there awhile, and then left and came on back, and did not meet anybody at all but an old man ; that's the only one he saw at all coming on ; he did not come up to Dr. Goss's, did not come that way, but turned off and took a near way to his home. He further stated : "Papa came home that night and was talking to Mama about it, and he said the man who lived out that way said, if he just knew what boy went out that road he was going to kill him, he didn't care whether he done it or not; he said he was going to kill him. And then when Mr. Austin [the sheriff] told me to come on and go with him and he asked me about it, I told him, no sir, I hadn't been out that road, because I was scared of that man."

W. W. BRASWELL, for plaintiff in error.
JOHN S. CANDLER, sólicitor-general, *contra.*