### 333.   ATLANTA & WEST POINT RAILROAD CO. *v.* HUDSON.

1. In a suit against a railroad company for killing stock, where the vital point illustrating the question of negligence is the distance that the stock could have been seen on the track by the engineer, it is competent for the plaintiff to prove the results of experiments made sub-sequently to the accident, where it appears that the experiments were made at the place of the accident, and upon facts and under conditions substantially similar to those surrounding the accident.

2. Physical experiments based on substantially similar facts frequently elucidate the truth in controversy. The closer the similarity in the facts proved and the facts upon which the experiment is based, the greater the probative value of such evidence.

3. The charge of the court complained of, on the subject of the impeach-ment of witnesses, was a substantial compliance with the sections of the code.

4. The rule of diligence required of railroads in running cars to prevent killing stock is not modified or altered by the legislation known as the

stock law; and it is not, as matter of law, contributory negligence to allow stock to run at large in communities where such stock or fence law prevails.

5. No error of law was committed, and the verdict was warranted by the evidence.

Action for damages, from city court of LaGrange—Judge Harwell.    October 6, 1906.

Argued May 7,—Decided July 18, 1907.

*Dorsey, Brewster, Howell & Heyman, A. H. Thompson,* for plaintiff in error.    *J. R. Terrell, F. P. Longley,* contra.

HILL, C. J.    The plaintiff sued the Atlanta and West Point Railroad Company for killing two cows and injuring a third. The jury found a verdict for the plaintiff, and the motion of the defendant for a new trial was overruled.    The evidence showed that the cows were killed at or near a private crossing near the town of LaGrange.    The contention of the defendant was that the engineer could not see the cows in time to stop or control the train, because of the embankment of a cut through which the track ran just before reaching the crossing, that the cows came from around the edge of the cut, and the engineer did not see and could not have seen them until the train was right at them; that he did everything in his power to prevent the accident after seeing the cows.    The plaintiff contended that a cow at or near the crossing in question could be seen by the engineer for several hundred yards before reaching the crossing, and in ample time to stop or get the train under control.

1. The storm center of the evidence was the contested point as to how far a cow could have been seen on the track by the engineer in approaching the crossing at or near which the accident occurred.    To illustrate this question, the court permitted the plaintiff to prove the result of certain experiments he and others had made.    These experiments consisted in placing a steer at and near the crossing where the cows were killed, and then in determining by sight and measurements how far the steer could be seen up the track in the direction from which the train was approaching; and also by determining in the same manner the distance from the track near the crossing that the steer could be seen by a person standing where the train left the cut before reaching the crossing.    The results of these experiments were objected to as

evidence, by the defendant, on the ground that they were not based upon the actual facts of the case, and were therefore irrelevant. The experiments were made according to the facts as proved by the plaintiff. Experiments made in and out of court sometimes make a practical demonstration of the question in issue, and are often the best evidence in elucidating the truth. It is necessarily largely within the discretion of the trial court to determine whether the testimony shows that the experiments were made under such conditions as to fairly illustrate the point in issue. Yet, when it is shown that the conditions were essentially the same, the testimony should be admitted, and its weight determined by the jury. If the experiments be predicated upon different facts than those in the particular case, evidence of the results would tend to confuse rather than enlighten the jury, and should be excluded. We think the true rule is that there should be substantial and reasonable similarity in the facts proved in the case and the facts upon which the experiment is based. The facts need not be exactly or in every particular similar; if they are sufficiently similar to accomplish the purpose of assisting the jury to intelligently consider the issue of fact presented in regard to the special point in controversy, the evidence is admissible. Of course the closer the similarity in the facts of the case and the facts of the experiment, the greater the probative value of the evidence. Morton *v.* State (Tex. Cr. App.), 71 S. W. 281; Com. *v.* Piper, 120 Mass. 185; 5 Enc. Ev. 475, 485. The case of Byers *v.* Nashville R. Co., 94 Tenn. 345, 29 S. W. 128, is analogous to the present one. It appeared that plaintiff's husband had been killed by defendant's train while crossing a bridge. On the question as to whether the engineer could have stopped the train after coming in view of the deceased, the plaintiff was allowed to introduce evidence of experiments showing the distance at which a man could be seen standing where deceased was killed. We think, under the facts in the record, the requirements of the law were sufficiently shown to make the evidence of the experiments and the results therefrom admissible.

2. Error is assigned on the following charge as to impeachment of witnesses: "A witness may be impeached by proof of contradictory statements as to matters that are material to the issues on trial. The general rule is that when a witness has been

successfully impeached, he should not be believed. If such. witness be corroborated, that is, if there be other evidence in the case sustaining what the witness said, such witness may be believed. In all attempts at impeachment, it is for you, the jury, to say whether or not such attempt has been successful." The objection to this instruction is, that it took away from the jury the right to believe the witness although impeached by proof of contradictory statements, it being for the jury to determine the credit to be given his testimony when impeached by proof of contradictory statements. This criticism of the charge is not well taken. The court did leave the whole matter of the witness's credit, although impeached, to be determined by the jury.

3. Error is assigned on the failure of the court to charge the jury upon the issue of contributory negligence. It is claimed that what is known as the stock law existed in the community where the cows were killed, and that the fact that the owner of the cows allowed them to roam at large where such law prevailed furnished evidence of contributory negligence. The existence of the stock law may be a pertinent fact to be considered by the jury along with other facts and circumstances in determining the question of the exercise of ordinary and reasonable care and diligence in guarding against killing stock by the running of trains. The existence of the stock law is not necessarily evidence of contributory negligence, nor is the rule of diligence imposed by law upon railroads to prevent the killing of stock altered or modified by such local legislation. "With or without the stock law, the degree of diligence required of railroad companies is one and the same. It is ordinary and reasonable care." Besides, there was no request for the court to charge on this subject; and even if such instruction had been proper, there was no error in failing to give it where no request to do so was made.      *Judgment affirmed.*