14505.  BULLARD *v.* METROPOLITAN LIFE INSURANCE COMPANY.

JENKINS, P. J.   1.  In this suit against a life-insurance company, upon a policy providing that it shall "become null and void and the company will return only the premiums which have been received thereunder," if "the insured within one year from the issue hereof die by his own hand or act, whether sane or insane," the evidence upon the issue of self-destruction authorized the verdict for the defendant.  *New York Life Ins. Co.* v. *King,* 28 *Ga. App.* 607 (112 S. E. 383).  Upon the other issue raised in the plea, as to whether or not the insured in his application for insurance made a material false representation, in stating that he had never had disease of the heart,—the evidence likewise, though slight, authorized the verdict.

2.  The words "die by his own hand or act," as used in a life-insurance policy, are in general synonomous with "voluntary suicide," and convey the idea of intentional self-destruction; but where with such words is coupled the provision "whether sane or insane," it is immaterial whether the insured at the time of the self-destruction was sane, or whether his "mental faculties were so impaired as to destroy his moral responsibility."  *Jenkins* v. *National Union,* 118 *Ga.* 587, 588 (45 S. E. 449) ; *Campbell* v. *Ætna Life Ins. Co.,* 20 *Ga. App.* 281, 283 (93 S. E. 24) ; 4 Words & Phrases (2d series) 773, 774.

(*a*)  The defendant insurer having sufficiently pleaded and relied upon the express clause in the policy above quoted, and not upon the Georgia statute providing that "death by suicide . . releases the insurer from the obligation of his contract" (Civil Code of 1910, § 2500), the rule governing a defense under the statute (see *Life Asso.* v. *Waller,* 57 *Ga.* 533), that the self-destruction must have been a conscious, voluntary, intentional, and rational act, was not here applicable.  *Mutual Life Ins. Co.* v. *Durden,* 9 *Ga. App.* 797 (72 S. E. 295).  The court did not err in refusing to charge to the effect that the policy would not have been voided "if the insured took strychnine from an insane impulse which he had not the power to resist," so that he did not at the time have the power of volition.

(*b*)  The court correctly charged the jury the law pertinent to the defense by the insurer under the express self-destruction clause of the policy, that it should thereby become void whether the insured was sane or insane, and that the burden was upon the defendant insurer to show that the death was not the result of natural or accidental causes, but that the insured died by his own act or hand from taking strychnine with the intention of destroying his life.  The requests of the plaintiff to charge certain principles of law in this connection, so far as correct and pertinent, were covered by the instructions given.

3.  The court did not err in charging the jury that if the insured "did have a disease of the heart at the time he signed this application for the issuance of this insurance, then the plaintiff would not be entitled to recover," for the reasons contended for by the plaintiff in error, to wit: that the court thus failed to construe and define the words "heart disease," and that the evidence did not warrant such a charge.  The exception as certified by the trial judge recites that the plaintiff in effect

admitted during the trial that if the insured, at the time of signing the application, in fact had "heart disease," the representation was of such materiality as would defeat the plaintiff's recovery. "Where there is some evidence to show the existence of a certain state of facts, it is not error for the court to charge in reference thereto, simply because the great preponderance of evidence tends to show that the supposed state of facts did not in truth exist." *Lyles* v. *State*, 130 *Ga.* 294 (8) (60 S. E. 578). "There may be facts on which to base a charge of the court, without any direct evidence on the point to which the charge relates. It is enough if there be data from which a legitimate process of reasoning can be carried on." *Holland* v. *Long*, 57 *Ga.* 37 (3). While there was no direct evidence that the insured had a "disease" of the heart, there was testimony that before applying for the insurance he was in the habit, as he stated on several occasions to one of the witnesses, of taking strychnine "for his heart." From this testimony and other evidence of habitual continued use of this drug, the jury were authorized to infer such an involvement of the organ as warranted the charge. In the absence of a timely written request, it was not error for the court to fail to construe and define the meaning of the term "heart disease." *Holmes* v. *Olisby*, 121 *Ga.* 241 (48 S. E. 934, 104 Am. St. R. 103) ; *Forlaw* v. *Augusta Naval Stores Co.*, 124 *Ga.* 261 (52 S. E. 898) ; *Zachary* v. *Zachary*, 141 *Ga.* 404 (81 S. E. 120) ; *Supreme Conclave* v. *Wood*, 120 *Ga.* 328, 337 (47 S. E. 940).

4. The court charged as follows: "If you find that the defendant company has shown by a preponderance of the evidence that Ross H. Ogletree made a representation that was not true, why then the plaintiff in this case would not be entitled to recover anything, and you should return a verdict for the defendant." The only exception taken to this excerpt is that it instructed the jury that if "the insured made any representation that was not true, the plaintiff could not recover, whereas movant contends that even if Ogletree, the insured, made a representation that was not true, before it could avoid the policy it must be shown to be a material representation and so material as to change the nature, character, or extent of the risk to the insurance company; and whether such representations were made, and, if so, whether they were so material, were questions of fact for determination by the jury." The instruction was not error for the reason assigned, in view of the fact that the only misstatement contended to have been made by the deceased was with reference to a disease of the heart, the application stating that he had no such disease, and in view of the admission by the plaintiff during the trial, shown by the record and referred to in the preceding division of the syllabus, to the effect that if the insured in fact had heart disease, there could be no recovery. The contention of the plaintiff in this connection appears to have been that none of the evidence went further than merely to show some affection or trouble which did not constitute a disease of the heart.

5. "Expert testimony is receivable as to the cause and manner of death." "The opinion of a non-expert witness, who describes the facts, as to their relation to the cause of death, is receivable in evidence." *Lanier* v. *State*, 141 *Ga.* 17 (3), 19, 20 (80 S. E. 5) ; *So. Ry. Co.* v. *Hutchinson*, 136 *Ga.*

591 (2) (71 S. E. 802); *Fincher* v. *Davis*, 27 *Ga. App.* 494, 495 (4) (108 S. E. 905); *Ga. So. & Fla. Ry. Co.* v. *Walker*, 5 *Ga. App.* 155 (3) (62 S. E. 720); Civil Code (1910), §§ 5876, 5874.

6. Error in the admission of certain evidence ordinarily is cured by the introduction without objection of other testimony to the same effect. *Savannah Electric Co.* v. *Crawford*, 130 *Ga.* 421 (4) (60 S. E. 1056); *Bryant* v. *Sovereign Camp*, 29 *Ga. App.* 359 (2c), 361 (115 S. E. 285); *Louisville & Nashville R. Co.* v. *Lovelace*, 26 *Ga. App.* 286 (3) (106 S. E. 6).

7. Applying the rules stated in the two preceding divisions of the syllabus, the opinion of the experienced county physician to the effect that the death of the insured resulted from the taking of strychnine poison, which opinion was given after the witness had fully detailed the facts upon which the opinion was predicated, the appearance and condition of the body, which he had seen before it was moved, and the physical facts and circumstances which he ascertained from personal examination of the premises on the morning following the night of the death, was admissible as expert testimony, so far as it related to facts forming the basis of his medical opinion, and as the opinion of a non-expert so far as it related to other facts unrelated to a medical opinion, the witness stating to the jury such facts of his own personal knowledge. Moreover, it appears that after the objection to testimony on this line was made, to the overruling of which exception was taken, the following question and answer were admitted on redirect examination, without objection and exception: "Q. Is it your medical opinion, you testified on direct examination, I believe, that this man's death was caused from strychnine poison? A. Yes, sir; I think so."

(*a*) Evidence of this witness that the presence of blood on the floor under the mouth of the insured resulted from a convulsion "and the jumping and jolting and rubbing of his mouth on the floor," was likewise admissible as an expert medical opinion. It furthermore appears that the witness stated also to the jury the surrounding facts and circumstances, and that an examination of the mouth of the deceased showed the presence of serious "Riggs disease," with a spongy condition of the gums.

8. Exception is taken to the failure of the court "to instruct the jury to the effect that if the jury should find from the evidence that . . the insured died by his own hand or act, the plaintiff was entitled to a verdict for the sum of $14.44, the amount of the semi-annual premium, admitted to have been paid by the insured to the insurance company, and admitted in its answer to be due if he should die by his own hand or not." The petition in no wise sought or prayed for the return of premiums paid, under the clause of the policy providing that, "if the insured within one year from the issue hereof dies by his own hand or act, whether sane or insane, this policy shall become null and void, and the company will return only the premiums which have been received thereunder." The allegations and prayers sought only the recovery of the $1000 liability provided for in case of death, except as indicated, and of $250 and $200 as penalty and reasonable attorney's fees. While the answer of the defendant admitted that $14.44 in premiums had been paid by the insured, and that "defendant was only due to return the premium which had been

paid," it merely sets forth that such "sum was tendered to the beneficiary and declined by her," and does not admit the defendant's *present liability under the pleadings and issues as raised.* There was therefore no error in failing to charge the jury that, if they should find that the insured came to his death by his own hand, they should return a verdict for the plaintiff for the amount of the premium paid to the insurer.

*Judgment affirmed. Stephens and Bell, JJ., concur.*

DECIDED FEBRUARY 23, 1924.

Action upon life-insurance policy; from Muscogee superior court —Judge Munro.   March 17, 1923.

*G. Y. Tigner, George C. Palmer,* for plaintiff.

*Arnold & Battle,* for defendant.