30918. RANDALL *v.* THE STATE.

DECIDED NOVEMBER 30, 1945. REHEARING DENIED DECEMBER 19, 20, 1945.

362

364

*Russell G. Turner, Beddow, Ray & Jones,* for plaintiff in error.
*E. E. Andrews, solicitor-general, Reuben A. Garland, Durwood T. Pye,* contra.

MacIntyre, J. █ It will be here noted that the first two alibi witnesses of the defendant testified that he registered in a hotel in Meridian, Mississippi, under the assumed name of Wilson; that he had checked out at 1:54 p. m., on May 14, 1944. The distance from Meridian to Atlanta, Georgia, is 344 miles. The robbery was between 9:30 and 10:00 p. m. on May 14. By driving at an average rate of 46 miles per hour, which is 9 miles less than the legal speed rate in Georgia, he could have been in Atlanta at the time of the robbery.

The next alibi witness for the defendant was his sister, who testified in part that on May 14, 1944, at about 8:15 p. m., her brother was at her apartment in Montgomery, Alabama. If this were true, it would have been impossible for him to have traveled by automobile to Atlanta, a distance of 175 miles, by 9:30 or 10:00 p. m., the time of the robbery.

The next alibi witness, a taxi driver and an acquaintance of his sister, testified in part on direct examination that, after driving her home from the bus station, he carried her bag up to the door of her apartment, which was located at number 12 Clanton Street in Montgomery, and while standing in the door saw the defendant and his wife seated in the apartment; that this was between 8 and 8:30 p. m., on the night of May 14. However, he concluded his testimony on cross-examination as follows: "The first time I ever saw Joel Randall was in the same place at 12 Clanton Ave-

nue. . . That was the first time I had ever seen the brother. I am certain about that. I don't remember what day of the month that was, and I don't remember what month that was. I didn't write it down. It was in 1944. I don't remember whether it was before or after the 4th of July [1944]. I would not swear that the first time I ever saw him in my life was before the 4th of July [1944]."

As we interpret this, the witness would not swear that he had ever seen the defendant before July 4, 1944, which was after the robbery, which occurred on May 14, 1944. Of course, the jury were not required to accept the testimony of Posey that the defendant was in Montgomery, Alabama, at 8 or 8:30 p. m., on the night of the robbery. They could also take into consideration that Mrs. Mary Osmet was the defendant's sister and that she might have been mistaken as to the date or the time of day that the defendant had been in Montgomery on the night of the robbery.

McGehee, the next alibi witness, testified in part that he saw and talked with the defendant about repairing a broken spring on the defendant's car at his place of business in Montgomery between 6:30 and 7 p. m., on May 14. However, with reference to his testimony, the jury could take into consideration the testimony of Pressley, an investigator from the solicitor-general's office, who testified that he talked with McGehee and he (McGehee) said that he did not talk to the defendant, but saw him buy some gasoline in front of the business. The jury could also have taken into consideration the fact that the witness might have been mistaken as to the date.

The next alibi witness was J. L. Young, who testified that he saw the defendant in Montgomery, Alabama, at about 7:30 or 8 a. m. on the morning of May 15; that the distance from Montgomery to Atlanta is 175 miles; and that "it usually takes from 4 to 6 hours to drive from Montgomery to Atlanta, depending on your speed . . I think that I have driven from Montgomery to Atlanta in 4 hours." The road is paved all the way. Thus it might have been easy for the defendant to have been in Atlanta at 10 p. m., on the 14th of May and have been in Montgomery by 7:30 or 8 a. m., the next morning. We do not think that the jury were required to accept the defendant's alibi in preference.

to the State's evidence, which contained those elements that authorized the jury to say that the presumption of innocence had been overcome.

■ (2-6). "Where witness is unable to positively identify the defendant, his opinion and best judgment were relevant." 2 Wharton on Criminal Evidence, 1809 (2), § 940. *Kent* v. *State,* 94 *Ga.* 703 (19 S. E. 885), is one of the cases cited in the footnote in support of this statement. The *Kent* case, supra, is a headnote case, but by reference to the original record we find that it supports the statement as thus made. *Wiggins* v. *Henson,* 68 *Ga.* 819; *Berry* v. *State,* 10 *Ga.* 511; *Hester* v. *State,* 17 *Ga.* 130 (5), 134, 135; *Goodwyn* v. *Goodwyn,* 20 *Ga.* 600, 620 (4); Commonwealth *v.* Cunningham, 104 Mass. 545. Under such circumstances, upon the question of identity, "the facts detailed are not necessarily confined to a description of the appearance of the accused, but may cover isolated and apparently trivial circumstances that are in themselves inconclusive but which, when taken with other evidence, may be sufficient to establish the identity beyond a reasonable doubt. And, after detailing such facts, it seems that it is relevant for the witness to state an inference or an opinion as to identity." 2 Wharton on Criminal Evidence, p. 1810 (4). Here the witnesses, who were present at the time of the robbery, did not positively identify the defendant as the robber, but the court allowed them to testify, after they had fully stated the facts upon which they based their opinion, that in their opinion and judgment he was the man. *Clary* v. *State,* 8 *Ga. App.* 92 (68 S. E. 615). These witnesses also testified to facts which showed that they had had an opportunity to know, and that they had been where their minds could receive the impression and acquire the knowledge of the facts to which they testified, and upon which they based their opinion that the defendant was the person in question. The reason for the grounds of the opinions of the non-expert witnesses was sufficient for them to infer from the detailed facts that the defendant was the man in question. Thus the jury, as in cases of opinion evidence, could have said either that we, upon the consideration of the facts detailed by you upon which you base your opinion, do not accept that opinion and will, therefore, disregard it, or that we will give it credence. *Ocean Accident & Guaranty Co.* v. *Lane,* 64 *Ga. App.* 149 (12 S. E. 2d, 413).

The testimony given by witnesses, who were present at the time of the robbery, after detailing the facts upon which they based their opinion that the masked robber was the defendant, including the opinion by Mrs. Jennings that the defendant was the unmasked person who was near the scene of the robbery in the same building a few minutes prior thereto and acting suspiciously, along with the other isolated and apparently trivial circumstances, when considered in connection with each other and all the other evidence, can not be said to be of no value, but, on the contrary, gave the evidence those elements which authorized the jury to say that the presumption of innocence had been overcome, or which showed that the defendant was guilty beyond a reasonable doubt. The facts that the defendant had a napkin over the part of his face below his eyebrows with a hole for his nose, that the bill of his cap covered most of his forehead, that the witnesses who were at the scene of the crime would not positively identify the defendant but would go only to the extent of stating the facts and describing the appearance of the robber whose identity was in question, and then stated that upon these facts it was their opinion that the defendant was the robber in question, plus the fact that the witnesses were excited during the time of the robbery, do not bring this case within the rule "that the evidence lacks that element which is sufficient to rebut the presumption of innocence, or to show the defendant guilty beyond a reasonable doubt." *Patton* v. *State,* 117 *Ga.* 230, 237 (43 S. E. 533).

There being sufficient evidence to rebut the presumption of innocence, "the jury were the sole judges of the facts and it was their privilege to draw their conclusions from the entire evidence or from any part of it." *Sutton* v. *State,* 123 *Ga.* 125 (51 S. E. 316). It is the prerogative of the jury to believe certain parts of the defendant's statement and combine it with certain parts only of the evidence. *Goldsmith* v. *State,* 54 *Ga. App.* 268, 271 (187 S. E. 694). If a witness testifies inconsistently, that circumstance goes to his credit, but does not authorize the court to hold that the testimony of a witness not a party has no probative value because it is inconsistent or self-contradictory. *Reaves* v. *Columbus Electric & Power Co.,* 32 *Ga. App.* 140(3). "'A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof,

it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration.'" *Reaves* v. *Columbus Electric & Power Co.,* supra. After a verdict of guilty, in passing on a motion for new trial, that view of the evidence most favorable to the State must be taken, for every presumption and every inference is in favor of the verdict. *Johnson* v. *State,* 69 *Ga. App.* 663 (2) (26 S. E. 2d, 482). The jury having found the verdict and the trial judge having approved it, we can not say, under the above rules, that the evidence did not support it.

■ (7). Ground 25 contends that there was no evidence upon which to base a charge of conspiracy. The defendant was being tried alone on an indictment against him only. The pressure was not on the fact that robbery had been committed, but on the identity of the person who had committed it. The robber had worn a mask in the nature of a napkin, which covered most of his face and had fled the scene immediately after the robbery. "It is not, on the trial of one of two or more persons jointly indicted for a crime, inappropriate to charge upon the law of conspiracy merely because the indictment does not in terms allege that there was a conspiracy to commit the offense." *Dixon* v. *State,* 116 *Ga.* 186 (8) (42 S. E. 357). "'It makes no difference, as to the admissibility of the act or declaration of a conspirator against a defendant, whether the former be indicted or not, or tried or not, with the latter; for the making one a codefendant does not make his acts·or declarations any more evidence against another than they were before; the principle upon which they are admissible at all being that the act or declaration of one is the act or declaration of all united in one common design, a principle which is wholly unaffected by the consideration of their being jointly indicted . .'" *Slaughter* v. *State,* 113 *Ga.* 284, 288 (38 S. E. 854, 84 Am. St. R. 242).

It was relevant for the State to show the following circumstances which tended to identify the accused: That Barney Berry was acquainted with the arrangement of the said Paramount Theatre; that he had been seen in this theatre numerous times; that he had never been seen with a ticket; that the manager had had several conversations with Berry in the office; that he had been seen at different places in the theatre; that he had been seen right outside of the storm lobby (this was the lobby from which the assistant

manager's office was entered) ; that he had been seen talking with various employees; that he had been seen talking to the ushers or "some one around;" that he had never been employed at the theatre; that his business there was purely social, that is, to say "Hello," or "how are you doing?" that, under the testimony of the manager of the theatre, Berry knew the arrangement of the theatre—"That is not hearsay. I know [that Barney Berry knew the arrangement of the theatre]. I have seen him in the Paramount Theatre numerous times. I have seen him in the Paramount many times." That the defendant had a confederate who had posted or informed him as to the time the money was taken from the box office each night and carried into the room in question to be counted and put into the safe; that the defendant was informed as to the secret knock which he used to gain entrance to this room, whose doors were locked while the money was being counted; that a confederate was awaiting the defendant in an alley adjacent to the theatre in an automobile in which they fled; that five days later the defendant registered at a hotel in St. Petersburg, Florida, under an assumed name; that Berry registered at the same time, and at the same hotel also under an assumed name; that, two days thereafter, the defendant was arrested near Columbus, Georgia, while riding in his automobile with a 32-caliber pistol lying beside him on the front seat; that this pistol was similar to the one used by the robber in the holdup; that Barney Berry was riding in the car with Randall and was arrested at the same time; that both the defendant and Berry made inquiries as to the charges against them. 2 Wharton on Criminal Evidence, p. 1807 (12).

While such facts are not confined to the appearance of the accused, and may cover isolated and apparently trivial circumstances that in themselves are inconclusive, they, when taken together with other evidence, may be sufficient to establish the identity beyond a reasonable doubt. 2 Wharton on Criminal Evidence, p. 1810 (4). There is no such crime as conspiracy under our law, but one may be found guilty of a crime caused by acts pursuant to an already-formed conspiracy. The crime is the act prohibited by statute, not the conspiracy alone. *The conspiracy of itself is no crime.* "The crime is that prohibited by the statute, and the conspiracy is referred to as an incident, and one of the means by which

the act is accomplished." *Bishop* v. *State,* 118 *Ga.* 799, 802 (45 S. E. 614). It might be said that our whole law on the subject of conspiracy simply presents an aspect of our law of evidence. Thus it would not be proper to charge the jury to bring in a verdict of a conspiracy to rob, but the verdict should be for robbery, even though the evidence of the State proved that there was a conspiracy to rob and in pursuance thereof the defendant did rob. *Daniels* v. *State,* 58 *Ga. App.* 599, 609 (199 S. E. 572). Thus the evidence which tended to show each and all of the circumstances enumerated in this division, along with other evidence, was sufficient to authorize the judge to charge in part as follows: "Gentlemen, a conspiracy is a plan, scheme, or course of conduct between two or more persons to commit a crime. When and if a conspiracy has been proved to exist, and it may be proved by facts as well as by circumstances, then I instruct you that the act of each one participating in the commission of the crime becomes the act of all who participate, in so far as such acts are done pursuant to and during the perpetration of, or commission of the crime. The court does not intimate whether or not a conspiracy has been shown to exist, but gives you this rule which you may apply if you find that there was conspiracy, and if you find that that rule of law is applicable to this case." A conspiracy may be shown by direct or circumstantial evidence. *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488) ; *Dixon* v. *State,* 116 *Ga.* 186 (42 S. E. 357) ; *Carter* v. *State,* 141 *Ga.* 308 (1) (80 S. E. 995). "To justify a charge on a given subject, it is not necessary there should be direct evidence going to that point; it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it." *Holland* v. *Long,* 57 *Ga.* 36, 41 (3) ; *Sovereign Camp W. O. W.* v. *McDaniel,* 20 *Ga. App.* 430 (93 S. E. 105) ; *Bullard* v. *Metropolitan Life Insurance Co.,* 31 *Ga. App.* 641 (3) (122 S. E. 75) ; *Orange Crush Bottling Co.* v. *Smith,* 35 *Ga. App.* 92 (132 S. E. 259). "To warrant the court in charging the jury on a given topic, it is not necessary that the evidence should shine upon it with a clear light. It is enough if glimpses of it be afforded by the evidence. Truth is often dim, but is truth nevertheless. Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts." *Brown* v. *Matthews,* 79 *Ga.* 1 (2) (4 S. E. 13).

"Where there is some evidence to show the existence of a certain state of facts, it is not error for the court to charge in reference thereto simply because the great preponderance of evidence tends to show that the supposed state of facts did not in truth exist." *Lyles* v. *State,* 130 *Ga.* 294(8) (60 S. E. 578). We think that the evidence authorized such a charge.

■ (8). Grounds 4, 6, 10, 11, 16, 17, and 20 are objections to evidence by the defendant on the ground that it was irrelevant and immaterial and that it has no probative value. The evidence objected to in each of these grounds tended to prove one of the circumstances which are recited in division 3 of this opinion and there stated to be relevant. The evidence objected to on these grounds was relevant and they show no reversible error.

■ (9). Grounds 21, 22, 23, and 24 will be discussed together. The court did not abuse its discretion in permitting Mr. Pounds, of the solicitor-general's staff, to testify, although he had been in the courtroom during the trial, and the rule as to sequestration of witnesses had been invoked by defendant and ordered by the court. *Evans* v. *State,* 70 *Ga. App.* 500 (2) (28 S. E. 2d, 671).

The court did not err in admitting evidence that a preparation known as "Zip" was on general sale to the public of Atlanta; that it quickly and readily removed hair from the hands and arms of one's person; that a bottle of it had been purchased near the courthouse during the trial; that Mr. Pounds gave a bottle of it to Mr. Helms, who applied it to his arms according to directions on the bottle; and that within five minutes the hair was removed from Mr. Helms' arms, only water being used in connection with the "Zip;" nor did the court err in admitting the bottle of "Zip" into evidence. This evidence tended to show the ease with which the defendant could have changed his appearance by removing the hair from his hands and arms; and was admissible in connection with the evidence that, when the defendant while in the Columbus jail, was identified as the robber, his hands and arms were hairy, as on the night of the robbery; that, when he was in Florida five days after the robbery, his hands were hairy; but that upon the trial there was no hair on his hands and arms. The defendant sought to show his innocence by the fact that on the trial he had no hair on his hands and arms (as the evidence showed that the robber had), and he exhibited them to the jury, and also exhibited his chest to show

that it had no hair thereon. It was proper for the State to show the ease with which he might have altered his appearance in this respect, i. e., by the use of this preparation available to the public. The defendant's contention that the evidence related to an experiment, and was therefore illegal, is without merit. "The admission of testimony as to experiments must largely rest in the discretion of the trial judge; and the exercise of this discretion will not be controlled, unless manifestly abused. The weight to be attached to such testimony is for the jury, and varies according to the circumstances of similarity which the jury may find to exist between the experiment made or observation taken and the actual occurrence whose facts and features are under investigation." *Augusta Ry.* v. *Arthur*, 3 *Ga. App.* 513 (2) (60 S. E. 213); *Standard Oil* v. *Reagan*, 15 *Ga. App.* 571 (3) (84 S. E. 69); *A. & W. P. Ry.* v. *Hudson*, 2 *Ga. App.* 352 (2) (58 S. E. 500); *Carolina Portland Cement Co.* v. *Marshall*, 9 *Ga. App.* 555 (2) (71 S. E. 942); *Taylor* v. *State*, 135 *Ga.* 622 (7) (70 S. E. 237). The essential part of the testimony here involved was that this hair remover was readily available and that the defendant could have purchased it on the open market. The simple test made on the person of Mr. Helms merely tended to corroborate the other testimony by actually showing how effectual the preparation was, and how quickly and effectively the defendant could have removed the hair in question. These grounds disclose no reversible error.

■ (3). Ground 5. The State's contention being that seven days after the time of the robbery the defendant was arrested near Columbus, Georgia, and that at that time, as well as at the time of the robbery, his eyebrows were bushy and the back of his hands were hairy, but that, at the time of the trial, they had been changed, the court did not err in permitting an identifying witness, Bedell, who was present at the time of the robbery, to come near the defendant in the courtroom and then to testify with respect to the defendant's identity. *Paschall* v. *State*, 89 *Ga.* 303 (1) (15 S. E. 322); Underhill's Criminal Evidence (4th ed.), 171, § 126; State *v.* Johnson, 67 N. C. 55.

■ (8). Ground 11. The court did not err in admitting in evidence the pistol found in the defendant's car, lying beside him on the seat, at the time of his arrest near Columbus, for witnesses who were present at the time of the robbery testified that the pistol

used in the robbery was similar to the one found near the defendant in his car. *Dill* v. *State,* 106 *Ga.* 683 (3), 686 (3) (32 S. E. 660); *Lively* v. *State,* 178 *Ga.* 693 (3), 694 (3) (173 S. E. 836); *King* v. *State,* 166 *Ga.* 10 (8), 13 (8) (142 S. E. 160).

■ (8). Ground 13. The court allowed Miss Headrick, who was present at the robbery, to testify that the picture which was being shown at the Paramount Theatre at the time of the robbery was "Uninvited." Even if we should concede that this testimony was irrelevant, it was not of such a character that its introduction would require a reversal.

■ (9). Ground 18. We do not think that the refusal to allow the testimony offered by the defendant in this ground was error, for it was a self-serving declaration. However, if we should concede that this testimony was competent, it was not of such a character that a refusal by the court to allow it was reversible error.

■ (8). Ground 19. The court did not err in admitting testimony of Mr. Presley that his driving time from Montgomery, Alabama, to Atlanta, Georgia, a distance of 175 miles, was 3 hours and 45 minutes. This tended to show that the defendant could have been at Montgomery in the late afternoon of May 14, the date of the robbery, and yet have driven to Atlanta in time to have committed the robbery. It also tended to discredit his claim of alibi, in which he asserted that it was impossible for him to have been on the scene of the crime at the time of its commission. See 16 C. J. 559 (28); 22 C. J. S. 940-942, § 619. It might be noted that the legal rate of speed, under the Georgia law, of a Mercury automobile, the character of car in question, is 55 miles per hour, which is indicative of the fact that this type of car can run 55 miles per hour or better, and driving at an average rate of approximately 45 miles per hour, the witness drove from Montgomery to Atlanta in approximately 3 hours and 45 minutes.

■ (10-14). Grounds 14, 15, and 26 are all based upon the ground that the Code, § 27-2511, is not applicable to the instant case, in that the defendant had been pardoned for the former crime alleged in the indictment. Such section reads as follows: "If any person who has been convicted of an offense and sentenced to confinement and labor in the penitentiary shall afterwards commit a crime punishable by confinement and labor in the penitentiary, he shall be sentenced to undergo the longest period of time and labor

prescribed for the punishment of the offense of which he stands convicted." The indictment in the present case was drawn alleging robbery, a felony, and, in order to bring the punishment within the provisions of section 27-2511, it further alleged that the defendant had been convicted of a former felony (burglary). The defendant tendered in evidence a pardon, which reads as follows:

"Executive Department—State of Georgia

"Conditional — Pardon Order — Conditional

Atlanta, May 8, 1939.

"In re: L. O. Randall—Application for Executive Clemency.

"The applicant, J. O. Randall, convicted at the April term, 1945, of the superior court of Bibb County, of the crime of burglary and sentenced to from five to ten years,

"The Governor having had under advisement an application for executive clemency in the above stated case, recommends conditional pardon for the following reasons:

"On the statement of solicitor-general Charles H. Garrett that, 'We believe that this doubt is sufficiently serious to warrant a pardon in his case.' And upon recommendation of Judge W. A. McClellan, the trial judge, who concurs in the views of the solicitor-general in prosecuting the case, and who says, 'I am convinced that the ends of justice demand that he be pardoned at once.' And on the recital by the solicitor-general that chief of police, Ben T. Watkins, joins Judge McClellan and the solicitor-general in requesting that Randall be granted a pardon immediately. And on the documentary evidence submitted in support of the petition.

"Therefore, in view of the foregoing facts, it is Ordered: That said J. O. Randall be granted conditional pardon upon the condition that applicant not violate the laws of this or any other State, or the Federal government. Should J. O. Randall violate the terms of this conditional pardon, same shall be revocable at the pleasure of the Governor.

"E. D. Rivers, Governor."

The State objected to the introduction of this pardon, and in refusing to admit it the judge stated: "I am going to rule out the pardon on the statement of counsel that you do not wish to offer anything except the pardon. That will rule anything except his conviction out."

The defendant contended that the ruling out of such pardon,

which he contended absolved him of all legal consequences of the former conviction of burglary referred to in the indictment, could not, therefore, be a basis for an added penalty in the subsequent offense of robbery.

It seems to us that this is a pardon granted on condition that its grantee thereafter observe and keep the law. "A pardon is an act of mercy flowing from the fountain of bounty and grace; its effect, when it is a full pardon, is to obliterate every stain which the law attached to the offender, to place him where he stood before he committed the pardoned offense, and to free him from the penalties and forfeitures to which the law had subjected his person and property:—'to acquit him,' says Sir William Blackstone, 'of all corporal penalties and forfeitures annexed to the offense for which he obtains his pardon.'" *U. S.* v. *Athens Armory,* 35 *Ga.* 344, 362. In this case the pardon contained the words, "full pardon and amnesty." A pardon is partial "where it remits only a portion of the punishment or absolves from only a portion of the legal consequences of the crime." A pardon is conditional "where it does not become operative until the grantee has performed some specified act or where it becomes void when some specified event transpires." Warren *v.* State, 127 Tex. Cr. 71 (74 S. W. 2d, 1006). Applying these definitions to the paper above quoted, it is not a full pardon but a conditional one, and the question here presented is not whether a full pardon prevents the conviction of a defendant for a former felony from being considered in fixing and enhancing the punishment in the instant case under the Code, § 27-2511, for clearly the pardon before us is not a full pardon. It is only a partial, conditional pardon, which was expressly conditioned on its grantee thereafter keeping and observing the law. When the defendant again violated the law and a verdict of guilty in the present case was a judicial determination that he had done so, such violation was the transpiring of an event which made the conditional pardon inoperative or void. *Muckle* v. *Clarke,* 191 *Ga.* 202 (12 S. E. 2d, 339). In fixing the punishment after such a conviction in the present case, for which the defendant was on trial and stood convicted, the provisions of § 27-2511, known as the second-felony-offense statute, and providing for the longest period of time and labor prescribed for the punishment of the present offense, were applicable. *Pippin* v. *Johnson,* 192 *Ga.* 450 (15 S. E. 2d, 712);

*Huff* v. *Aldredge,* 192 *Ga.* 12 (14 S. E. 2d, 456) ; *Pappas* v. *Aldredge,* 192 *Ga.* 482 (15 S. E. 2d, 718) ; *Harrell* v. *Mount,* 193 *Ga.* 818 (2), 822 (20 S. E. 2d, 69, 58 A. L. R. 49). Under the facts of this case, the judge did not commit reversible error in refusing to allow the defendant to introduce the conditional pardon.

 The judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*