## 33510. NOTIS *v.* THE STATE.

DECIDED MAY 23, 1951. REHEARING DENIED JUNE 14, 1951.

*Spence M. Grayson, Ernest J. Haar,* for plaintiff in error.
*Andrew J. Ryan Jr., Solicitor-General,* contra.

GARDNER, J. 1. In the first special ground the defendant assigns as error the refusal by the trial judge to sustain a motion made by him to quash and exclude all of the evidence obtained by the police officers when they made the raid on the night club, without a warrant to search the premises and with no warrant to arrest anyone, in that such evidence resulted from an illegal search and seizure by these officers and could not, under the provisions of the U. S. Constitution, 4th, 5th and 14th amendments (Code, §§ 1-804, 1-805, 1-815), and the provisions of the Georgia Constitution (Code, §§ 2-103, 2-106 and 2-116) be used against him. The particular question raised in this special ground and involving the identical evidence, which the defendant claims herein was illegally obtained by the officers, has been determined by this court adversely to the defendant. See *Huff* v. *State,* 82 *Ga. App.* 545 (61 S. E. 2d, 787), wherein this court affirmed the judgment of the superior court denying a new trial to Raymond Huff, who was in the room of the night club along with the defendant when the officers made

their raid, and who was jointly accused with the defendant, B. J. Notis, along with 11 others, for the operation of the gambling device charged.

2. The defendant, in the second special ground of his motion for new trial, contends "That the court erred after having sustained a motion of the defendant 'that the State be forbidden the right to offer documents for comparison' since they had not submitted them to the defendant for examination thereafter by indirection, permitting State's witnesses to testify to the authenticity of the signatures of B. J. Notis on the envelopes found at the scene of the raid. Mahoney's knowledge of defendant's signature being based on seeing defendant sign a bail bond at the time of his arrest, movant contends that the court erred in allowing him to base his testimony on excluded evidence and in permitting this evidence, and said failure of the court to limit said evidence and the failure of the court to specifically charge the jury that said evidence of familiarity with the defendant's signature could not be accepted for purposes of comparison, was a violation of the law of Georgia that limits such comparison only where the documents had been submitted for examination before trial and was prejudicial to the rights of the defendant, and was the sole evidence upon which the defendant was convicted.

The State did not, as is contended by the defendant, after the court had refused to permit the expert witness, offered by the State to prove the handwriting of the defendant on the lottery papers found by the officers at the scene of the raid by comparison with the known handwriting of the defendant, seek by the State witness, Officer Mahoney, a non-expert as to handwriting, to prove the handwriting of the defendant on these lottery tickets, receipts, envelopes and papers seized by the police officers in their raid upon the night club, by comparison with the admittedly genuine handwriting and signature of the defendant. The State offered the testimony of Officer Mahoney to prove the handwriting of the defendant, not by comparison with the known handwriting of the defendant but by reason of the familiarity of this witness with the handwriting of the defendant, which was proper.

It is provided by Code § 38-709 that the writings offered for

comparison must be submitted by the State to the defendant before the State announces ready for trial, that is, that the instrument or instruments embodying the known handwriting of the defendant must have been submitted by the State to the defendant for examination before the State announced ready for trial, in order for the State to use such document or documents in the known handwriting of the defendant or containing his genuine signature for the purpose of comparing such handwriting and signature with the purported handwriting and signatures of the defendant in the papers and on the instruments seized by the officers at this raid of the night club and which constituted evidence that the defendant had operated, that is, kept, maintained, employed and carried on the gambling device as charged in the accusation. Therefore, when the State sought through an expert witness to prove the signatures and handwriting of the defendant to the lottery documents and papers found at the night club when the officers raided same by comparison thereof with the known handwriting and genuine signature of the said defendant, the trial judge, pursuant to the provisions of Code § 38-709, supra, correctly refuses to allow in evidence said document or documents embodying the known handwriting and signature of the defendant for the reason that the same had not previously, before the State announced that it was ready for trial, submitted such document or documents to the defendant for examination.

However, when the trial judge would not permit the instrument or instruments embracing the known handwriting and genuine signature of the defendant to be introduced in evidence, the State could not prove the handwriting and signatures of the defendant by comparison of the known handwriting and genuine signature with the purported handwriting and signatures embodied in the papers and writings seized when the officers raided the night club and which had been properly identified as being the papers and writings found by the police officers when they raided the night club and as being papers and writings used in the gaming device charged in the indictment, the State sought to prove that the handwriting and signatures on these gambling device papers and writings was that of the defendant by a witness who was familiar with the handwriting and signa-

ture of the defendant and knew the same when he saw such handwriting and signature. This the State could properly do and the weight and credit to be given thereto was for the jury to determine. Code § 38-708, immediately preceding the above Code section, provides that "Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such case, any witness shall be competent to testify as to his belief, who shall swear that he knows or would recognize the handwriting. The source of his knowledge shall be a question for investigation, and shall go entirely to the credit and weight of his evidence."

The record shows that the State offered an expert witness for the purpose of making a comparison between the known handwriting and signature of the defendant and the handwriting and signature on the writings used in connection with the operation of the gambling device charged, and which were discovered by the police officers when they raided the night club, and that this expert witness was not permitted to make such comparison in that the paper or papers embodying the known handwriting and signature of the defendant were not submitted to the defendant by the State before it announced ready for trial. This the trial judge correctly did. However, Officer Mahoney testified that he knew and was familiar with the handwriting and signature of the defendant and that it was his opinion and belief that the handwriting and signatures on the papers and writings found by the officers when they raided the night club constituted the handwriting of said defendant. This witness did not base his knowledge upon comparison of the known handwriting and signature of the defendant with the handwriting and signatures on the papers and writings discovered and seized by the police on the raid of the night club, which could not be done. *Copeland* v. *State*, 66 Ga. App. 142 (5) (17 S. E. 2d, 288). But the witness testified that he was familiar with the handwriting and signature of the defendant; that he would swear that he knew and recognized the handwriting and signature of the defendant; and that he would say that the papers and writings found by the police officers when they raided the night club and which were discovered on the table in the room where the defendant and others jointly ac-

cused with him were at the time the officers entered the room, were in the handwriting of this defendant and contained his signature. The witness Mahoney was not an expert, but was simply testifying as to his opinion and belief, basing the same upon his knowledge of and familarity with the handwriting of the defendant, and he testified that he would swear that he knows the handwriting and signature and was familiar with the same and that he recognized the handwriting and signatures, contained in the papers and writings identified as the papers and writings found and seized by the police on this raid of the night club, and introduced in evidence as papers and documents found by the police on a table in a room of the night club, where the defendant was, when they raided the same, as being the handwriting and signatures of the said defendant.

The source of this knowledge of such witness may be inquired of but the same goes entirely to the credit of the witness, and the weight is to be given by the jury to his testimony, and not to the legality or illegality and the admissibility or inadmissibility of the testimony and evidence. The witness may testify and it is for the jury to determine what credit and weight is to be given such testimony.

Therefore, the objection of the defendant that the witness Mahoney "is not sufficiently familiar with it (the handwriting and signature of the defendant) by one signature to make the testimony valid and of probative value" is not well taken. It is true that Officer Mahoney had stated on cross-examination that he based his familiarity and knowledge of the defendant's handwriting and signature on having seen him sign his name but one time. However, the Code provides that the source of the witness's knowledge "shall be a question for investigation and shall go entirely to the credit and weight" of his evidence. It has been held that the manner in which a witness acquired his knowledge of the person's handwriting is immaterial. *Reid* v. *State*, 20 *Ga.* 681. So, a non-expert witness is competent to testify as to his belief in the genuineness or falsity of signatures to writings, where such witness will swear that he knows or would recognize the handwriting of the person purporting to have signed the instrument in question. *Finch* v. *Hayes*, 147 *Ga.* 147 (93 S. E. 89). A non-expert witness may identify the

handwriting of a particular person (as he would the person himself), provided he knows the handwriting or is so familiar with it that he recognizes it. *Hester* v. *State,* 17 *Ga.* 133, 134; *Copeland* v. *State,* supra.

Applying the above principles the court clearly did not err, for any of the reasons assigned in this special ground of the defendant's motion for a new trial, in permitting the witness, Police Sergeant Mahoney, to testify that he was familiar with and knew the handwriting of the defendant and that in his opinion the handwriting and signatures on the papers and writings, found in the night club when the officers raided the same, were those of the defendant.

In the third special ground, error is assigned on the court's charge that "The practical eye of the expert will enable him to perceive the distinguishing characterization or features in different specimens of handwriting, and at once to indicate points of similarity, not so with a non-expert, etc." This is not a complete statement, but is merely a fragment of the court's charge to the jury on this subject. An examination of the court's charge, as embodied in the record before this court, discloses that the court charged the jury as follows: "The practical eye of the expert will enable him to perceive the distinguishing characteristics or features in different specimens of handwriting, and at once to indicate points of similarity or dissimilarity, though he may be entirely unacquainted with the specimen presented, by long practice and observance he has become skilled in such matters. Not so with a non-expert. It is only when he has become familiar with the pecularities of the handwriting as one becomes familiar with the countenance of his friends or the characteristics of objects of common observance that he is able to distinguish between it and other specimens that may bear only a slight resemblance to it." No error appears from this charge of the court.

3. The verdict finding that the defendant "did unlawfully keep, maintain, employ and carry on a certain scheme and device for the hazarding of money other than a lottery, said scheme and device being known as and called 'Bolita' " was not without evidence to support the same and was not unauthorized by the evidence adduced upon the trial and was not contrary to

the law. The verdict was not contrary to the law for the reason that the accusation, under which the defendant was tried and convicted in this case, in charging the offense stated that it was a scheme or device for the hazarding of money "other than a lottery," by the use of the phrase in quotation marks.

There was no special demurrer interposed by the defendant to the accusation. The use of the words "other than a lottery," when the defendant was tried for and convicted of keeping, maintaining, employing and carrying on a form of lottery, known as "Bolita," in violation of Code § 26-6502, was superfluous and did not render the verdict of guilty illegal or contrary to the law for any reason. See *Goldwire* v. *State*, 83 *Ga. App.* 249 (63 S. E. 2d, 445). Such words were there held to be mere surplusage.

4. It follows that the trial court did not err in overruling the defendant's motion for new trial, as amended.

*Judgment affirmed. MacIntyre, P.J., and Townsend, J., concur.*